## STANDIFER *et al.* v. SULLIVAN.

No. 1219.  Opinion Filed November 18, 1911.

(120 Pac. 624.)

1. **CONTINUANCE—Absence of Witnesses—Diligence.** A motion for a continuance on account of the absence of certain witnesses where no diligence is shown in trying to procure the attendance of the witnesses before the case was called for trial, was properly overruled.

2. **SAME—Absent Witnesses—Materiality of Evidence.** A motion for a continuance on account of the absence of certain witnesses was properly overruled, where such motion sets out the proposed testimony of the witnesses, and it appears 'from the motion that the proposed evidence, if offered, would not be material to the issues raised by the pleading.

3. **APPEAL AND ERROR—Trial—Review—Order of Admission of Testimony.** The question of the order merely in which testimony shall be produced at the trial is often largely within the sound discretion of the trial judge; the action of the court in permitting a party to introduce evidence out of its order, under the general rules for the production of evidence, when in the interest of justice, or the convenience of the parties and the court in the efficient dispatch of business, will not be disturbed, unless it is clearly shown that such discretion has been grossly abused.

4. **TRIAL — Instructions — Requests — Instructions Already Given.** Where instructions are asked and refused by the trial court, which correctly state the law, the refusal to give them is not error; when they have been covered, in substance and correctly, in the general charge of the court.

(Syllabus by Brewer, C.)

*Error from Haskell County Court; A. L. Beckett, Judge.*

Action by E. P. Sullivan against J. C. Standifer and others. Judgment for plaintiff, and defendants bring error.  Affirmed.

*C. T. Mitchell,* for plaintiffs in error.

*J. F. Hudson* and *Fred H. Fannin,* for defendant in error.

Opinion by BREWER, C.  This is an action for damages based on fraud and deceit.  It grew out of a mule trade.  The

case was tried in justice court and taken on appeal to the county court of Haskell county, where it was tried on April 13, 1909, and there was a verdict and judgment for defendant in error for $185 damages.

The facts briefly stated are: Defendant in error, plaintiff below, and hereafter called plaintiff, traded mules with plaintiffs in error, defendants below, and hereafter called defendants, on July 22, 1908, at McCurtain, Okla. Plaintiff was a country store-keeper, living several miles in the country from McCurtain. He did some freighting with a span of mules he owned. His mules did not exactly match in either size or color. He wanted to trade his smallest mule for a match for his largest one. He and defendant Standifer got together, and negotiations began. Plaintiff had never traded horses in his life, and knew very little about live stock. He told defendants so. Defendants were engaged, at least part of the time, in dealing in horses and mules. It appears they were what is generally termed "horse traders." When the negotiations were going on between plaintiff and Standifer, the other defendants, Smith and Ratteres, at different times appeared in the guise of bystanders, and in various ways encouraged plaintiff to make the trade; told him it was a good trade, etc. In horsetrading language they stood by, and "boosted" the trade. It developed later that all three defendants were joint owners of the mule being traded. The plaintiff did not know this. He asked their advice and for an expression of their judgment in confidence, and they gave it freely, but did not disclose their interest. The trade was made. Plaintiff swapped mules, apparently with Standifer, in reality with all three. Plaintiff let them have a good mule worth about $150 and gave them $25 in cash to boot. The mule plaintiff got was a good looking mule. It was large, and in fair condition as to flesh, and appeared to be a valuable animal. The plaintiff explained his reasons for wanting to trade, and the kind of mule he wanted, and the nature of the work he wanted it to do. Defendants told him this mule would suit him they thought; that it was a "Jim Dandy." Plaintiff started home with the mule, working him to the wagon. It

was with difficulty he made it home. After going two or three miles, the mule had a "spell," as the witnesses described it. They struck him with an iron rod, the size of a pencil, on the rump, and he fell down. Next day the mule was in such condition it could not be taken back eight or ten miles to town. The second day afterward plaintiff got it back to town, and tendered it to defendants, and demanded his mule and money back. This was refused. The mule lived for three or four months, and died. It appears that from before it was grown this mule had suffered with some terrible nervous disorder. And sudden sharp, loud noise near it would cause the mule to have some kind of nervous fit. A gunshot in close proximity, but not touching the animal, would cause it to fall like it was shot. A slight stroke with a weed on its rump would produce the same effect. Various previous owners testified as to this condition. No one knew what was the matter with it; they could only tell how it acted. The mule was worse than worthless. It was an added expense and care to its owner, without return of any kind of service. To a stranger upon even a careful examination this defect might not be observable. This defect was latent.

The defendants bring the case here for review, and allege as errors:

"(1)   Overruling motion for continuance.

"(2)   Because the court erred in permitting evidence to go to the jury over the objections of defendants as to the defects of the mule in controversy, before it was shown by the evidence that said defects were known to the defendants.

"(3)   Because the court erred in refusing to give instructions 1, 2, 4, 6, as requested by defendants."

Other errors are alleged, but defendants have waived them by not presenting and urging them in their brief. We will dispose of the questions in their order.

The alleged error of the court in not granting plaintiffs in error a continuance is without merit. Even without the rule that the action of a trial court in passing on a motion for continuance is often largely one calling for the exercise of sound discretion, and will not ordinarily be reversed unless an abuse of discretion

appears, the motion does not appear to have been meritorious. The ground alleged was the absence of four witnesses. In the first place, proper diligence in trying to procure the attendance of these witnesses is not shown. A subpoena for only one of them had been issued prior to calling the case for trial. It is not shown when this was issued, nor what efforts were made to have it served, nor is it even shown that it was placed in the hands of the sheriff for service. An excuse is stated for not issuing a subpoena for the other three witnesses before the calling of the case for trial; it being that the movants did not know of their testimony sooner. If the parties did not know of these witnesses, they were certainly very careless. It is claimed that three of the absent witnesses were present when the trade was made out of which this controversy arose, and they were wanted to testify that plaintiffs in error did not in words guarantee the mule. This action had been tried months before in a justice court, and had been pending a considerable time in the county court on appeal. The parties surely must have known the persons present when the trade was made, and, if they did not, certainly any kind of diligence would have discovered them. The testimony of the remaining absent witnesses would not have been material.

There is another reason why the action of the court in this matter should not be disturbed. The three witnesses were wanted to testify that defendants did not guarantee the mule they traded. While the evidence of these witnesses on some points might have been material on the specific point urged, it would not have been, for the reason that they were not sued on any express guarantee or warranty, but merely upon the warranties implied by law. And the court instructed the jury fully that no express warranty had been proven or was even claimed against defendants. The specific point it is alleged the absent witnesses would testify to, not being in issue, their testimony, so far as it is shown, would not have been material.

2. This allegation of error is based on the admission of evidence by the court regarding the defects of the mule. Defendants claim that this evidence was admitted "before it was shown

that defendants knew of the defects." If they mean to raise a question merely as to the order in which the evidence was introduced, of course, the point does not require very serious consideration. The rule is so well grounded and generally understood that the trial court has a wide discretion in the matter of the order in which evidence may be introduced, and may depart from the general rules regarding its production, when either justice or the convenient and efficient dispatch of business may require it, that it hardly needs a discussion.

If the defendants, however, intended to assert that there was no evidence in the case showing that they knew of the defects in the animal, or from which such knowledge would be the reasonable and logical deduction, then we think they are in error as to the facts. In our judgment a careful reading of all the evidence in this case would convince any ordinary person that they did know of the wholly worthless character of this animal. All of the many witnesses appearing in this case, and they were numerous, except the three defendants, testified as to the very unusual and terrible nature of this animal's malady. It seems to have had some kind of nervous disorder. It looked all right, was a rather fine looking animal, in fairly good flesh, ate and drank heartily; yet upon any sharp sudden noise, such as firing a gun, striking a board against the house, or a stroke with a small switch on the rump, it would suddenly quiver from head to feet, its muscles would tighten for a moment, and it would then fall prone upon the ground. Under the proof the defendants owned this mule jointly, evidently for trading purposes. They were horsetraders, and had it about ten days. It is true the defendants deny that they knew of the defects. They assert they thought he was suffering from some harmless form of "stringhalt," and it is airily insinuated that the freakish conduct of the mule might be attributable to mullish caprice, and the natural exhilaration of abundant life. But this is not satisfying. Any person on terms of even the slightest familiarity with this mule must have known of his ailments. There is not the slightest suggestion in the record that he ever misled any one as to the fact

that his remarkable, and, we may add, intolerable, condition, was to him painfully real. That the defendants could have handled this mule ten days and never have observed the phenomena attending his peculiar malady could not be accepted by the most credulous. That they did not know of such terrible and constantly recurring defects is incredible.

The defendants' third contention is that the court erred in refusing to give certain instructions asked by them. They make no complaint, and have taken no exceptions to the charge given by the court. We have examined the instructions given by the court, and those refused by it, with care, and we have no doubt but that the charge of the court as a whole covered the law of the case correctly. The instructions asked by defendants as a matter of fact were, as to all correct statements of law, covered fully in the court's general charge. If any criticism should be offered to the charge of the court, it would be that some parts of it were too favorable to the defendants. Of course, they cannot complain of this.

We find no error in the proceedings in the trial court, and the judgment should be affirmed.

By the Court: It is so ordered.

All the Justices concur.