## OKLAHOMA CITY RY. CO. v. COLE.

No. 4059. Opinion Filed May 25, 1915.

(149 Pac. 866.)

1. STREET RAILROADS—Streets—Duties. The rights of a person driving along a public street and a street railway company operating cars thereon are equal and correlative; one is bound to the same degree of care as the other. It is the duty of each acting in his own place and under the circumstances surrounding him to exercise that degree of care to avoid accident that an ordinarily prudent man would exercise under like conditions.

2. STREET RAILROADS—Duty of Motorman—Street Crossing It is the duty of a motorman in charge of a car, when approaching a street crossing, to keep watch and see whether or not people on the street ahead of him are in danger, or in difficulty, such as might throw them in contact with the car he is running, and, if so, to endeavor to get his car under such control as would enable him to avoid causing injury to such people, and to not take hazardous chances of people getting out of the way, and to exercise reasonable care to avoid accidents.

(Syllabus by Galbraith, C.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by John C. Cole against the Oklahoma City Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

*John W. Shartel* and *Burke Shartel,* for plaintiff in error.

*Edward R. Hastings* and *John Embry,* for defendant in error.

GALBRAITH, C.   Main street, one of the principal thorough-
fares of Oklahoma City, runs east and west, and is practically
level, and crosses Hudson avenue, which runs north and south,
at right angles.   The plaintiff in error maintains a double track
of rails most of the length and near the center of Main street.
About 1 o'clock in the afternoon of July 26, 1907, John C. Cole,
a farmer, came to the city with a wagon load of baled hay.   His
wagon was drawn by two mules, and he was sitting on top of the
hay driving north on Hudson avenue, when at the intersection of
Main street, while crossing the tracks of the plaintiff in error, one
of the cars collided with his wagon, striking the hind wheel
thereof, wrecking the wagon, and injuring the mules and harness
and hay, and throwing the plaintiff to the pavement with great
force, and thereby causing him serious and permanent bodily
injuries.   This action was instituted to recover damages sustained
by the accident, which it was alleged was due to the negligence of
the railway company.   The defendant pleaded a general denial
and contributory negligence.   There was a trial to the court and
a jury, and a verdict for the plaintiff.   A motion for new trial
was filed and overruled, exceptions saved, and judgment entered
on the verdict, and an appeal perfected to this court.

The errors assigned and relied upon for a reversal of the
judgment are based upon the instructions given by the court to
the jury, and others requested by the plaintiff in error and refused.
The contention of the parties to the action as to the cause of the
accident, and who was at fault, will appear from excerpts of the
testimony herein set out.

The plaintiff's version of the accident, as given by him, is
as follows:

"Q.   When you came on Hudson street, you drove north, as I

understand you? A. Yes, sir; when I came to Hudson street I went north. Q. As you approached Main street, what occurred there? Just tell as you approached what you done, and what happened. A. As I approached Main street, there was an automobile coming down from the east, going it seemed to be, west, but it was crawling slowly along, moving along, and the mules looked at it and shied as I drove up. Q. Where was that automobile? A. That was on Hudson and Main. Q. Which side of Hudson? A. It was on the north side of the street, next to Mr. Rice's barn. Q. Where were you when the mules, you say, saw it? A. I drove the mules up on the street car line, and just as the front wheels got over the first track they stopped, and when they stopped they shied, and they went to seesawing, looking at it and trying to back back, and they could not do it, and I whipped and slapped them and done my best to get them along. I looked and seed the street car coming and I— Q. How far was that street car off when you first saw it? A. When I first noticed it, it was a block and a half, I suppose. Q. Which way? A. West. Q. Did you see it before you drove on the track? A. No, sir; I did not see it before I drove unto the track. I never looked for it until I found out I could not get the mules along, and when I found out that I was stuck there, the front wheels blocked, and they could not go back, nor they would not go, and the car was approaching me so fast, I looked and it was coming— I knew the motorman, and I signaled him with my hand just that way (indicating), and hollered and called him by his name, 'Ed, hold up,' and that is the last word I gave."

This testimony is corroborated by various witnesses called for the plaintiff.

The railway company's theory of the accident is given by the testimony of the motorman in charge of the car striking the wagon, as follows:

"Q. Now, where were you when you first observed Mr. Cole —how close to the street? A. I was about 300 feet I should say. Q. Where was he then? A. He was just approaching, just came up from behind the building line on Hudson street driving north. Q. When you saw him coming out from there, what, if anything, did you do? A. Rang my gong. Q. Then what, if

anything, did he do? A. He saw the car approaching, and started to stop his team, and did stop them at the south side of the track. Q. How far were you from him at the time he stopped? A. Well, I was 100 feet or more, possibly a little more. Q. Then, when he stopped, what had you done in the meantime, if anything, with reference to checking the speed of your car? A. I had slowed down. Q. How much? A. Well, I was not running more than ten miles an hour at that time. Q. What did you do, if anything, when he stopped? A. I continued slow, having the car getting down slower, until he backed up in the clear, then I released my brakes to go on. Q. How nearly were you stopped at that time? A. Well, I should say about like a man would walk, three or four miles an hour. Q. Practically stopped? A. Yes, sir. Q. Then when he backed his mules up in the clear, what did you do? A. I proceeded to speed up, go ahead. Q. What did he do? A. He started up again, then, directly after I did, started to go across. Q. When he started up again, what did you do? A. Well, I applied my brakes—cut off the current and applied my brakes. I seen I was going to hit the wagon, and I released the brakes and reversed the car. Q. What do you mean by that—reversing the car? A. Pulling the reverse lever and running the car in another direction. Q. Why did you do that? A. Because I could see I could not stop with the brakes, and thought I could stop with the other, perhaps."

This testimony is corroborated by the evidence of other witnesses called by the plaintiff in error.

The issues of fact as to whose negligence was the proximate cause of the accident were questions for the jury. If the court, in its instructions, fairly stated the law arising upon these issues, then there is no prejudicial error in the record, and the judgment appealed from should be affirmed.

The court, after stating the issues arising upon the pleadings, in No. 4, properly instructed the jury as to the burden of proof, and in No. 5 defined "negligence" and also "ordinary care," and in instruction No. 6 the respective rights of the parties to the use of the streets are explained. This instruction is as follows:

"You are instructed that the plaintiff and defendant both had a right to use the streets of the city. Therefore at the time of the accident they were in the exercise of equal rights. It was likewise the duty of both to exercise reasonable care to avoid collision, but it was not the duty of the defendant to exercise a higher degree of care than the plaintiff, nor was it the duty of the plaintiff to use a higher degree of care than the defendant. It was the duty of each, acting in his own place and under the circumstances surrounding him, to exercise that degree of care to avoid the accident which a reasonably prudent person would have exercised under the circumstances."

In No. 7 the court told the jury that the railway track itself was a warning of danger, and that it was the duty of all persons approaching the same to look and listen for approaching cars, and to use reasonable care to avoid injury from the cars; and in No. 8 the duty of the motorman in charge of the car is set out. This instruction reads as follows:

"It is the duty of a motorman in charge of a car, when approaching a street crossing, to keep watch and see whether or not people on the street ahead of him are in danger, or in difficulty, such as might throw them in contact with the car he is running, and, if so, to endeavor to get his car under such control as would enable him to avoid causing injury to such people, and to not take hazardous chances of people getting out of the way, and to exercise reasonable care to avoid the accident."

In No. 9 the court instructed the jury as to the "last clear chance doctrine," and in No. 10 the jury were told that before they could find for the plaintiff they must find from a preponderance of the evidence that the plaintiff at the time of the collision was exercising that degree of care an ordinarily prudent man would exercise under similar circumstances, and in No. 11 the jury were given the proper rules for measuring the damages for the plaintiff's injuries in case they should find for him. In No. 12 the jury were advised that they were the exclusive judges of the facts, but informed that they must take the law as contained in the instructions from the court. In No. 13 they were specially told that they

should not single out any particular paragraph or paragraphs of the instructions and base their deliberations and verdict upon it, but must take the instructions altogether and consider them as a whole; and in No. 14 they were instructed as to electing a foreman and told that their verdict must be unanimous.

These instructions, it seems, embody a fair statement of the law arising upon the issues made by the pleading and the testimony in the cause, and are supported by the following decisions of our court: *Oklahoma City Ry. Co. v. Barkett*, 30 Okla. 28, 118 Pac. 350; *Stephens et al. v. Oklahoma City Ry. Co.*, 28 Okla. 340, 114 Pac. 611, 33 L. R. A. (N. S.) 1007; *A., T. & S. F. R. Co. v. Baker*, 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; *Clark v. St. L. & S. F. R. Co.*, 24 Okla. 764, 108 Pac. 361. In at least two of the requested instructions correct rules of law arising upon the issues of the case were set out, but it seems to us that these rules were unduly shaded in favor of the railway company, and inasmuch as these rules were embraced in and fairly stated by the court in the instructions given, it was not error to deny the requested instructions. *Finch v. Brown*, 27 Okla. 217, 111 Pac. 391; *Ellet-Kendall Shoe Co. v. Ross*, 28 Okla. 697, 115 Pac. 892; *Pioneer T. & T. Co. v. Davis*, 28 Okla. 783, 116 Pac. 432; *Standifer v. Sullivan*, 30 Okla. 365, 120 Pac. 624.

Exception was saved and is urged to instruction No. 9 in the court's charge to the jury. There is serious question in our minds whether or not the last clear chance doctrine was in this case, for the reason that it was not pleaded, and arose, if at all, under the evidence. However, the plaintiff in error was not prejudiced by this instruction, since, if the question was not in the case, it was given, by this instruction, the advantage of the presumption that the defendant in error was negligent, when his testimony does not show negligence on his part. He was quietly driving along a public street, where he had a right to be, when his mules became frightened at the automobile and stopped on the railway tracks, and he saw he could not go forward or backward. He looked for the

car, and saw it a block and a half away. One driving a wagon along a much-traveled street of a city, seeing a car coming . a block away, is not required to stop and wait until the car passes. He may rightfully proceed and expect to clear the track before the car arrives. This instruction assumes that the defendant, in error was negligent in not looking for the car and waiting until it had passed, while his testimony does not warrant this presumption, and for that reason the plaintiff in error was not prejudiced by the instruction, even if this question was not properly in the case.

The cause seems to have been fairly tried, and the verdict and judgment supported by the evidence. We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.