**HOPE NATURAL GAS CO. v. IDEAL GASOLINE CO.**

No. 13459—Opinion Filed Sept. 15, 1925.

Rehearing Denied Jan. 26, 1926.

(Syllabus.)

**1. Appeal and Error—Review — Questions of Fact—Conclusiveness of Verdict.**

When questions of fact are submitted to a jury for their determination under proper instructions, the finding of such jury will not be disturbed on appeal if there is any evidence reasonably tending to support the verdict.

**2. Same—Existence of Fraud.**

When fraud is properly alleged upon the one hand and denied upon the other, the existence or nonexistence of such fraud becomes a question of fact for the jury to determine under proper instructions, and upon appeal the verdict of such jury upon such facts will not be disturbed by this court if there is any evidence reasonably tending to support such findings.

**3. Trial — Instructions — Sufficiency as a Whole.**

It is not necessary for each separate instruction to embody every fact or element essential to sustain or defeat an action, nor is it necessary for each separate instruction to cover the entire case. If the different instructions, taken together and considered as a whole, fairly present the law of the case, and there is no conflict between the different paragraphs thereof, this will be sufficient.

Error from District Court, Tulsa County: Albert C. Hunt, Judge.

Action by the Ideal Gasoline Company and F. M. Selby, W. G. Selby, W. K. Shepard, C. H. Pape, and Thomas J. Summers, stockholders and incorporators, and Selby Oil & Gas Company, a Delaware corporation, and F. M. Selby, W. G. Selby, W. K. Shepard, and C. H. Pape, as officers and trustees of Selby Oil & Gas Company, a dissolved Oklahoma corporation, against Hope Natural

Gas Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Arthur E. Young, West, Gibson, Sherman, Davidson & Hull, and Ames, Lowe, Richardson & Cochran, for plaintiff in error.

Edward R. Hastings and Moss & Owen, for defendants in error.

PHELPS, J. On the 25th day of May, 1920, plaintiffs filed their action in the district court of Tulsa county, alleging that the defendant, acting through its agent, Walter DuMont, falsely represented that defendant had for several years been engaged in the business of manufacturing gasoline from gas by means of a certain patented process owned by defendant and known as the "Saybolt Process," and were engaged in designing, constructing, and operating gasoline plants for that purpose; that the process had been in use for some time in various oil fields of the country and had been demonstrated to be practical, successful, economical, and a superior process for extracting gasoline from casing-head gas, but that the use of said process required and necessitated experienced, skilled, and expert operators in constructing, equipping, and operating such plants, and that defendant had prepared and would furnish complete designs, plans, and specifications for the construction of such plants; that none of plaintiffs or their employes or agents had any knowledge of or experience in the gasoline business, or in constructing or operating such plants, and particularly those using the "Saybolt Process," and so informed defendant; that said statements and representations were false and untrue and made by said Walter DuMont with the intent that they should be relied and acted upon, and that plaintiffs, believing said statements to be true, and relying thereon, were induced to enter into a contract for the use of the said "Saybolt Process," and that as a part of the same transaction and for the purpose of carrying out and putting into effect the contract, another and further contract, partly oral and partly in writing, was entered into, by the terms of which defendant agreed to furnish complete plans for a plant to manufacture gasoline by said "Saybolt Process," and take full charge of the assembling, purchasing of materials, and the construction of said plant, installing the equipment therein, and for that purpose to furnish a skilled engineer and construction superintendent, who was to be in the employ of defendant, but have full charge and control of constructing the plant and installing said process therein, and as a result of such representations plaintiffs were induced to

proceed with the construction of such plant pursuant to said contract, under the direction of one Henry T. McClelland, but owing to the complicated and defective design of the plant so furnished and the lack of knowledge, skill, and experience upon the part of said construction superintendent, and owing to the fact that "Saybolt Process" was wholly impracticable, the plant was improperly constructed and wholly unfit for the purpose for which it was built, was a failure and impossible of operation; that as constructed said plant could be put to no other use than that of a gasoline plant, and as constructed could not be so operated except at great loss, and it had no value other than second-hand value of the materials constituting its construction, amounting to about $50,000; that the construction of the same cost in excess of $172,000, and that plaintiffs were damaged in attempting to operate the same in the sum of $75,000.

Defendant filed its answer, consisting largely of denials of the allegations in plaintiffs' petition, and denied that it entered into any contract with plaintiffs except a written royalty contract, which is attached to and made a part of plaintiffs' petition, and alleged that said Henry T. McClelland was not its agent in the construction of said plant, but was in the employment of plaintiffs, and that defendant participated in no way in the construction of said plant; that if any of the plaintiffs believe that they have made an agreement with any employe of the defendant, the defendant had no knowledge of any such oral or verbal agreement, and not having authorized any one in its name or on its behalf to enter into any such agreement, the defendant is not bound by the same and has not received or accepted any benefits or advantages therefrom, and has not ratified or confirmed the same, and repudiates the right or authority of any person to make any such agreement.

Upon the issues thus joined the cause went to trial before a jury, resulting in a verdict in favor of the plaintiffs for $183,190.17, upon which verdict the court rendered judgment, and from such judgment and the court's order overruling defendant's motion for a new trial appeal is prosecuted to this court.

For convenience the parties will be referred to herein as they appeared in the court below.

The record and briefs in this case are very voluminous, but we have taken much time and care to examine the record pertaining to the issues raised by the plead-

ings, and find that on the questions of fact raised in the pleadings and presented to the jury for their determination there is ample evidence to uphold the verdict of the jury, under that well-known rule of law prevailing in this state that where questions of fact are submitted to a jury and there is evidence reasonably tending to support the finding of the jury, the verdict will not be disturbed upon appeal.

In its petition in error the defendant (plaintiff in error) sets out 37 assignments of error, dealing principally with the admissibility of evidence either admitted or rejected during the trial of the cause, and the law governing the case as set out in the instruction either given or refused by the court. Relative to the assignments of error predicated upon the admission or exclusion of evidence much is said in the briefs, also in the oral argument of counsel, but careful examination of the record and close attention to the oral argument of counsel lead us to the conclusion that the errors therein committed, if errors there were, are not such errors as prejudiced the rights of defendant, unless it possibly be the admission, over the objection and exception of defendant, of plaintiffs' exhibit No. 54, the same being a letter written by Walter DuMont, alleged agent of defendant, to Doctor J. B. Garner, who the record discloses was head of the chemical research department of the Hope Natural Gas Company, during the progress of the negotiations between DuMont and the plaintiffs.

It is contended by plaintiffs that defendant contracted to construct the plant in question; it being contended by defendant that it merely agreed to furnish the construction engineer, who was to be the employe of plaintiffs. Walter DuMont, who plaintiffs allege was the agent conducting the negotiations, was upon the witness stand in behalf of defendant and counsel for defendant was interrogating him, and the record discloses the following questions and answers (page 1073 of Record):

"Q. You have referred in your testimony to a telegram that you sent to Pittsburgh asking that these plans and specifications be adjusted to a million feet of gas, and I will ask you if plaintiffs' exhibit No. 5 is the telegram to which you refer, and if so, read it to the jury. A. I think that is the telegram; yes, sir. Read it? Q. Read it to the jury. A. 'Tulsa, Oklahoma, September 15, 1917. J. B. Garner, care Hope Natural Gas Company, Sixth avenue, Pittsburgh, Pennsylvania. Letter received, Selby signed, if you still think Lambert big enough for job, send him at once with blue prints. Fine

people, big job, Lambert must understand he must live in sticks and take over entire construction, plant, lines and vacuum pumps, They will depend upon him absolutely. Have personally guaranteed his ability. They depend on him to recommend engines, material, and machinery. Suggest you go over plans with him carefully, based on million feet. Selby waiting for him. Wire when he will arrive. Am writing.' Walter Dumont.'
Q. Mr. DuMont, will you state whether or not Henry C. McClelland made any report or reports to you with regard to the progress of the construction of the gasoline plant of the Selby Oil & Gas Company while he was employed? A. Yes, sir; I believe that he did. Q. Were all of these reports made to you, personally? A. I am—I believe some were, and some were sent to Doctor Garner, I believe; I am not dead sure of that. * * * "

Witness was then turned over to counsel for plaintiffs for cross-examination, and during the progress of the cross-examination he was asked the question:

"Q. Who is Mr. J. B. Garner? A. Why, he was head of the chemical research department of the Hope Natural Gas Company, as I understand it. Q. He is personally connected with the Hope Natural Gas Company, and to him you reported progress on all of these matters out here at that time? A. To Doctor Garner, and I think to John G. Pew, vice president."

He was then cross-examined in regard to a letter marked "Plaintiffs' Exhibit 6," which he had written to Doctor Garner, stating that he was inclosing therewith "signed contract for the Selby Oil & Gas Company, for the erection of a gasoline plant at 1-20-7, Pawnee county, Oklahoma."

Plaintiffs' exhibit 54, being a letter written by the witness to Doctor Garner, was then presented to the witness and was by the court admitted in evidence over the objection and exception of defendant, which letter in full is as follows:

"Hope Natural Gas Company
    "409 South Boulder Avenue
        "Tulsa, Oklahoma,
            "March 20th, 1917.
" (Personal and Confidential)
"Dear Doc:

"Along the lines of several little conversations we have had from time to time, I am going to send you in the strictest confidence, a letter I received from Colonel Mosby.

"Colonel Mosby, as you and I both know, is a wizard when it comes to drafting gasoline stations, and a very valuable man. I could get a job for him, with any of the

good companies out here in five minutes, at double the salary the Hope is paying him, but he is too good a man to lose, and I am writing him this morning telling him to stick with the Hope, and to wait until his opportunity comes.

"Here is one man we want if we are to come across with an efficient Mid-Continent (forget that Oklahoma stuff) organization. I know you think well of him, and incidentally, he has a very high regard for yourself.

"I think I told you (pardon my egotism) that there wasn't a single fellow in that organization that wouldn't prefer to go with me. Do as you think wise about the Colonel, but I sure would keep him happy, as he is too good a man to lose, and frankly, I could land him a job in this country in no time that would pay him double whatever the Hope is paying him.

'We are feeding these gasoline men out here raw meat and dynamite, mostly dynamite, and they are all 'r'aring to go' for absorption. I have turned down a dozen intimations that my services could command a dazzling salary, but some of these days the lure of the siren is going to be too strong, and you may lose your little playmate.

"Good luck to you. I suppose you are up to your eyes in the lawsuit. Don't let them get your goat. I really believe we have got a cinch. We are getting the natives buffaloed, and believe me, they are getting 'plumb peaceable' and respectful. Sam notices it and remarks on it. He says they used to treat him like a 'crum', but now they are plumb decent, and listen to him respectfully.

"Very sincerely yours,
"WDM.

"P. S. Sam is doing fine work, and doesn't kick at long hours, or making a packing mule of himself generally. It is a crime that we haven't an automobile truck for a testing apparatus, and a regular car for getting around this country. We are sure handicapped."

Defendant makes bitter complaint of the admission of this letter in evidence, claiming that the statements therein were prejudicial to its interest. It is very clear that, standing alone, this letter would not be competent evidence and it would be prejudicial error to admit it, but there was a dispute between plaintiffs and defendant as to the authority of DuMont to conduct these negotiations, and the court admitted the letter, as the former letter and telegram were admitted, for the purpose of showing all the facts and circumstances and negotiations leading up to the construction of the plant in question, and while this letter may have been admissible only by a "hair's

114-2

breadth," in the light of that which preceded it and particularly the direct examination of the witness by counsel for defendant relative to the telegram touching on the same subject-matter, we are of the opinion that the court committed no error in allowing the letter in question to be introduced.

It is further contended by defendant that the court committed numerous errors in giving the instructions to the jury and refusing others tendered by defendant, and particularly complain of instruction No. 10, which reads as follows:

"You are further instructed that if the agents and representatives of the plaintiffs were actually ignorant and unskilled in reference to the methods, appliances, and means of construction in reference to the extraction of gasoline from casing-head gas by the Saybolt method, and so informed said defendant and its said agents, and if you further find by a fair preponderance of the evidence that the agent of the defendant, Walter DuMont, after being apprised of the ignorance and lack of experience on the part of plaintiffs on such subject, represented to the plaintiffs, with the knowledge and consent of defendant or while acting in the apparent scope of his authority, that the defendant and its agents and employes were specially skilled in the matter of manufacturing gasoline from natural gases, including casing-head gas, by the Saybolt Process, and were specially skilled in the art of designing, constructing, and operating plants for the purpose of extracting gasoline from natural gas, including casing-head gas, then the plaintiffs had a right to rely on his representations as to the skill possessed by the defendant, and if the defendant did not possess the skill, experience, and knowledge which the said DuMont represented to the plaintiffs that they did possess, or if, possessing such skill, knowledge, and experience, they did not apply it, and the plaintiffs were injured thereby, then the plaintiffs would be entitled to recover of the defendant whatever damage they actually sustained as the direct and proximate result either of a lack of knowledge, skill, and experience by the defendant and the persons whom they furnished, if they furnished any, or such damages as they suffered as the proximate result of the failure of the agents and servants of the defendant who were furnished to the plaintiffs, if any were furnished, to exercise such skill, judgment, and experience as it was represented they possessed."

It is contended by defendant that this instruction was erroneous because it omitted to state that before plaintiffs could recover the jury must find that the fraudulent statements pleaded must have been made with fraudulent intent, or that the representations alleged were made with the knowl-

edge of their falsity, or made recklessly without knowledge of their truthfulness or falsity and as a positive assertion.

This instruction must be construed in connection with the other instructions given, particularly instruction No. 21, which says:

"Even though the jury should find that Walter Dumont did represent to the plaintiff C. H. Pape in substance that the Hope Natural Gas Company had the best experts and the most trained corps of men in the country that worked all the time in the development of this process—Saybolt Process—that it had a corps of engineers who did nothing but design for plants, draw plans, and work on that part of it, they had their own chemists, they had their own construction men, and they had every class of men who were experts in their particular line, plaintiffs would not be justified in taking such representations as literally true, and if you find such representations were substantially true, that is, that the Hope Natural Gas Company did have trained and experienced men working constantly in the development of the Saybolt Process and engineers designing plants for the use of the process and their own chemists and construction men working upon the process and putting it into effect, then there can be no recovery against the defendant in favor of the plaintiffs based upon such representations."

Construing these two instructions together, in the light of the testimony introduced, we cannot agree with defendant's contention. It will be remembered that plaintiffs alleged in their petition that they informed defendant's agent that they were ignorant of the method of extracting gasoline from casing-head gas, and that defendant's agent assured them that his company was familiar with and skilled in that particular industry, and in the trial of the cause Mr. Pape, an officer of the plaintiff company, gave the following testimony on that subject:

"A. I told him and Mr. Shepard told him also, in my presence, we being very careful to make it perfectly clear to him, that we had no business or experience in the gasoline business—did not know anything about building any kind of gasoline plants—and had no one in our organization who had had any experience in building a gasoline plant and we did not like to go into it for that reason. He said we could dismiss that part of it from our minds entirely, as they had men who did nothing else and were more competent to build plants than anybody else in the business under their process and it was their desire that they be allowed and permitted to build these plants under their entire supervision without any interference whatever from anybody, because they were desirous, particularly at this time, to have these plants erected in

first class shape, have all their latest improvements and designs and to be built strictly in accordance with their plans, which they knew it would be if their own engineers built it and were not interfered with."

And Mr. Shepard, another officer of the plaintiff, testified:

"A. I raised the objection some time in the conversation that we had not been in the gasoline business and knew nothing about it. He said that would be unnecessary, that they was—that they had—that they knew all about it and that the Hope Gas Company was a subsidiary of the Standard of New Jersey and had the best engineers in the world; that they would rather deal with men who knew nothing about the business than to take it up with somebody that was going to interfere. All we had to do was to sign the contract—they would furnish an engineer that was perfect—or absolutely competent to build this plant and run it until such a time as we were satisfied. We would have to—absolutely have to give it none of our attention."

Standing alone, without reference to any other instruction given, and without the limitations and amplifications contained in other instructions, there might be grounds for defendant's complaint, but the trial court gave instruction No. 27, reading as follows:

"You are instructed that in arriving at your verdict in this case you will not single out any particular instruction or paragraph of any instruction given you herein, but you will consider all the instructions as a whole and in their entirety, and consider each instruction in connection with all the others given in this case, and so apply such instructions in their entirety to the evidence before you, and in so doing, endeavor to arrive at a just and true verdict under all the instructions and all the evidence in the case, and return such verdict into court."

In instruction No. 9 the trial court charged the jury:

"That fraud is odious in contemplation of law and is not to be presumed, and that the burden of proof is on the plaintiffs to overcome such legal presumption by evidence satisfactory to the jury."

And in instruction No. 13 the trial court thoroughly, clearly, and succinctly defined the various elements of fraud, advising the jury that the existence of fraud is a question for the determination of the jury.

In Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166, in the second paragraph of the syllabus thereof, this court said:

"It is not necessary for each separate instruction to embody every fact or element essential to sustain or defeat an action, nor is it necessary for each separate instruction to cover the entire case. If the different instructions, taken together and considered as a whole, fairly present the law of the case, and there is no conflict between the different paragraphs thereof, this will be sufficient."

In Chicago, R. I. & P. Ry. Co. v. Newburn, 39 Okla. 704, 136 Pac. 174, in the fourth paragraph of the syllabus this court said:

"Where an instruction given may misstate the law, yet if, when taken with the other instructions, it is apparent that the jury were not misled, it will not constitute reversible error."

In Chicakasha St. Ry. Co. v. Marshall, 43 Okla. 192, 141 Pac. 1172, in the second paragraph of the syllabus this court used the following language:

"Where two instructions, construed together, fairly state the law, the case will not be reversed for error existing in one of them."

In Chase v. Cable Company, 67 Okla. 322, 170 Pac. 1172, in the second paragraph of the syllabus this court said:

"Where the instructions, taken together and considered as a whole, fairly present the law of the case, and there is no conflict in the different paragraphs thereof, this will be sufficient."

Section 319 of the Code of Civil Procedure (Comp. Stats. 1921) reads as follows:

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

And section 2822, Comp. Stats. 1921, reads:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

These sections of the statute have been construed in the following cases: Diamond v. Inter-Ocean Newspaper Co., 29 Okla. 323, 116 Pac. 773; Hertzel v. Weber, 31 Okla. 5, 120 Pac. 589; Mullen v. Thaxton, 24 Okla. 643, 104 Pac. 359; American Trust Co. v. Chitty, 36 Okla. 479, 129 Pac. 51; Yukon Mill & Grain Co. v. Imperial Roller Mills Co., 34 Okla. 817, 127 Pac. 422.

In Yukon Mill & Grain Co. v. Imperial Roller Mills Co., supra, this court said:

"In this case there is abundant evidence to sustain the finding of the jury on the issue of agency, and the ruling of the court in the admission of such evidence, even though erroneous, will not be interfered with."

Remembering that the trial court instructed the jury to consider all the instructions together, if we have a right to presume that the jury followed instruction No. 10, complained of, we also have a right to presume that the jury followed the other instructions and construed them all together, and a careful examination of the instructions as a whole leads us to the conclusion that they fairly and correctly stated the law governing the case.

A close examination of the record and briefs convinces us that the various other assignments do not present error which would justify a reversal of the cause.

The judgment of the trial court is therefore affirmed.

HARRISON, MASON, LESTER, CLARK, and RILEY, JJ., concur. HUNT, J., disqualified.

Note.—See under (1) 4 C. J. p. 853, § 2834. 2 R. C. L. p. 194; 1 R. C. L. Supp. 433; 4 R. C. L. Supp. 90, 5 R. C. L. Supp. p. 79. (2) 4 C. J. p. 853, § 2834; 27 C. J. p. 72, § 208. (3) 38 Cyc. p. 1598.