## SOUTHWEST MISSOURI R. CO. v. DUNCAN.

No. 18568.   Opinion Filed Nov. 19, 1929.

McReynolds, McReynolds & Flannigan, and A. C. Wallace, for plaintiff in error.

Frank Nesbit, for defendant in error.

JEFFREY, C. This is a suit by Junior Duncan, a minor, as plaintiff, brought by Rose Duncan, his mother and next friend, against the Southwest Missouri Railroad Company, as defendant, for personal injuries received when defendant's electric interurban car collided with an automobile in which plaintiff was riding at a grade crossing about one-half mile southeast of Galena in the state of Kansas. Plaintiff alleged that defendant was a Missouri corporation, and operated electric or interurban cars between Joplin, Mo., and Miami, Okla.; that defendant's railway track at the point of injury runs in an easterly and westerly direction; and that the public highway runs in a northerly and southerly direction and

crosses defendant's track about one-half mile southeast of Galena. Plaintiff further alleged that he was a minor ten years of age; that on June 29, 1926, he, his mother, and sister were traveling north on the highway toward Galena in an automobile as the guests of one Ike Enyart; that said automobile was owned and was being driven by the said Ike Enyard. That on the west of the public highway and south of defendant's railway track where the two cross, there are trees and undergrowth so as to obstruct the view to the west of one approaching the railway crossing along the highway from the south. Plaintiff alleged that the dangerous condition of said crossing was well known to defendant, its agents and employees, but that on the date above mentioned, while the automobile in which plaintiff was riding attempted to cross said track, one of defendant's electric cars approached from the west without sounding its bell or whistle at a dangerous rate of speed and struck said automobile, resulting in serious personal injuries to plaintiff. Plaintiff further alleged that the said Ike Enyart before crossing said track slowed down and looked to the east and to the west, but on account of his view being obstructed as aforesaid, he was unable to and did not see the approaching electric car. Defendant denied all allegations of negligence on its part, and pleaded contributory negligence, and the applicable rule of decision of the state of Kansas. The trial resulted in a verdict and judgment for plaintiff in the amount sued for, and defendant has appealed.

It is first contended that the trial court erred in overruling defendant's demurrer to plaintiff's evidence. Under this assignment of error counsel calls attention to the fact that the defendant's right of way was 50 feet wide, and that there was no growth of any kind or description on the right of way. It is then contended that under the rule announced in Holman v. Railway Company, 113 Kan. 710, 215 Pac. 1111, and Cooper v. C., R. I. & P., 117 Kan. 703, 232 Pac. 1024, to the effect that testimony that a person looked before crossing a railway track and saw no train approaching must be disregarded as untrue when the physical facts demonstrate that had such person looked he must have seen whatever was in the reasonable range of vision to be seen. Under this rule, it is contended that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff's evidence was that Enyart was driving slowly and when

he arrived within about 85 feet of defendant's tracks he slacked his speed, and both Enyart and plaintiff's mother, who occupied the front seat, looked and listened for an approaching car, but that they heard no car, and that the timber and undergrowth on their left was so dense and so near the track that they could not see defendant's car until it was right on them, and too late for Enyart to stop his car. Plaintiff's mother further testified that the railway crossing was familiar to them, that she had on other occasions heard defendant's cars whistle for the crossing, but that no whistle was sounded on this occasion until immediately before the collision. The evidence in this case, when summed up, is very similar to the evidence in Holman v. Ry. Co., supra. In that case, the court, after referring to the rule herein contended for, said:

"But here a witness, whom the jury saw fit to believe, testified that the engine and caboose came so rapidly that plaintiff could not see them and warn her husband, the chauffeur, between the time they entered her range of vision and the time of the collision. Hard to believe? Maybe so, but it could be true, so in this case the record does not clearly convict the plaintiff and her witness of perjury, nor the jury of downright insincerity."

The substance of plaintiff's testimony is that when the automobile in which plaintiff was riding arrived at a point where the electric car could be seen, it was too late to stop before arriving at the tracks, and the electric car was traveling too fast to permit the automobile to clear the tracks. This could be true. The physical facts do not conclusively disprove it.

In addition to these observations the same precaution required of one attempting to cross a railway crossing on which is operated an ordinary railway train is not required in crossing a street railway track or an interurban track. In both cases ordinary care is required of the traveler, but ordinary care varies with circumstances, and it has been held by the Supreme Court of Kansas and of this state that the amount of care and precaution required of one attempting to cross an electric car track is not so great as that required of one attempting to cross a steam locomotive track. Wyley v. Southwest Interurban Ry. Co., 89 Kan. 84, 130 Pac. 659; Muskogee Electric Traction Co. v. Tice, 116 Okla. 24, 243 Pac. 175. Plaintiff did not testify in the case, but his mother testified that she and plaintiff were guests of the said Ike Enyart, and had noth-

ing to do with the operation of the automobile. She further testified that she and Enyart occupied the front seat and plaintiff occupied the rear seat. If her testimony was true, plaintiff could not have seen the approaching electric car in time to warn the driver. The conduct on the part of plaintiff cannot be said to be contributory negligence as a matter of law, but is of a debatable character, and was properly submitted to the jury for its determination.

Defendant's next assignment of error is the giving of instruction No. 2. That instruction is as follows:

"You are charged that under the law of the state of Kansas it was the duty of Ike Enyart in driving his automobile to use such care and caution in the use of the crossing as would be commensurate with the danger involved, and if the view be obstructed it would, if necessary, be the duty of the said Ike Enyart to stop and walk down to the crossing to ascertain if any street car might be approaching. However, you are further charged that if you believe from the preponderance of the evidence that plaintiff was, at the time of the collision, riding as a guest of the said Ike Enyart, and had no control over the operation of the automobile and the situation was such at the time that due diligence required the said Ike Enyart to stop before attempting to cross said crossing in order to discover whether there was a street car approaching, the plaintiff would not be negligent in failing to observe the approach of the street car or in failing to insist that the automobile be stopped, and she (he) would be entitled to recover in this case, if you do not find her (him) to have been negligent as the same is defined herein, which negligence contributed directly or proximately to injury complained of."

It is the latter part of the instruction, which has to do with plaintiff's failure to see the street car, or to insist that the automobile be stopped, that is complained of. It is contended that the instruction does not require a finding that defendant's negligence was the proximate cause of the plaintiff's injury, and that it incorrectly states the law with reference to the responsibility of a guest as announced by the Supreme Court of Kansas. If this instruction stood alone, both objections would have to be sustained. However, the instruction is not susceptible of the exact interpretation placed on it by counsel for defendant. It would seem that the gist of the instruction is that plaintiff could not be charged with the negligence of Ike Enyart, if he were a guest in the Enyart automobile. The instruction sets forth the duties required of Ike Enyart, and then tells the jury that plaintiff would not be negligent in failing to see the approach of the street car, or in failing to insist that the automobile be stopped, and would be entitled to recover unless the jury should find that he had been guilty of negligence himself, as the same is defined in the instructions, which negligence contributed directly to the injury complained of. By instruction No. 10 the jury was told that before plaintiff could recover he must prove two things; one of which was that the defendant was negligent; and the other that such negligence on the part of the defendant was the proximate cause of the injury. The court further instructed the jury that negligence must be proven, and could not be assumed. The jury was further instructed that if the motorman on defendant's electric car used ordinary care and gave sufficient warning of the approach of the electric car by bell or whistle, plaintiff could not recover. The jury was further instructed that one might receive an injury and damage which could not be traced to the fault and neglect of any one, and that if the jury found that the collision in question was an unavoidable accident, and was not the result of defendant's negligence, plaintiff was without a remedy and could not recover.

Instruction No. 6 advised the jury that a railway crossing is a place of danger and every person is presumed to know the danger thereof; that such a one is required to exercise reasonable care for his own safety in approaching such crossing; that he is required to look and listen at a point sufficiently far that if he sees or hears a car approaching he will be able to stop the automobile and avoid a collision. By instruction No. 9, contributory negligence was defined, and the jury was told that if plaintiff was guilty of contributory negligence, which approximately contributed to his injury, he could not recover. This instruction concludes by stating that the question is, Has the care, diligence and skill demanded by the peculiar circumstances of the particular case been exercised by the plaintiff? If so, there was no negligence. If not, there was negligence. In addition to this the court defined ordinary care and proximate cause.

We cannot agree that the instruction erroneously stated the law of Kansas relative to the duty of an occupant of an automobile who was a guest of the driver. Other instructions above referred to told the jury what duties the law imposed upon plaintiff. Instruction No. 6 and others are correct in

defining the duties of plaintiff, and are not here questioned. The latter part of instruction No. 2 comtemplates that the evidence raises a question for the jury as to whether plaintiff was guilty of contributory negligence. The Supreme Court of Kansas seems to have so considered a similar situation in the case of Bradshaw et ux. v. Payne, etc., 111 Kan. 475, 207 Pac. 802, where it was said:

"Assuming that the driver of the automobile failed to exercise due diligence to stop before attempting to cross the railroad track in order to discover whether there was a car or train approaching, the deceased, being a mere guest of the driver, was not, as a matter of law, negligent in failing to observe the approach of the car, or failing to insist that the automobile be stopped in order to ascertain whether the car was approaching."

See, also, Kessler v. Davis, Fed. Agent, 111 Kan. 515, 207 Pac. 799. Under such circumstances as presented by the case at bar, as to whether the observance of ordinary care by such a guest requires more than was done by the occupants of the car, it is a question of fact to be determined by the jury.

It would seem that the best that can be said in favor of counsel's contention is that the court did not cover the entire case in instruction No. 2. This can rarely, if ever, be done. The jury were told that they could not consider any part or parts of the instructions to the exclusion of any other part, but must consider all of the instructions together. It is not necessary for each separate instruction to include every fact or element essential to sustain or defeat an action, nor cover the entire case. If all the instructions, taken together and considered as a whole, fairly present the law of the case, and there is no conflict between the different instructions, they will be held sufficient. Hope Natural Gas Co. v. Ideal Gasoline Co., 114 Okla. 30, 243 Pac. 206; Carter v. Binder, 128 Okla. 45, 261 Pac. 139; Chickasha Street Ry. Co. v. Marshall, 43 Okla. 192, 141 Pac. 1172.

The next assignment of error urged here is that the court committed error in giving a part of instruction No. 7. The first paragraph of that instruction is to the effect that when a motorman, operating a street car as in this case, sees one approaching the track ahead of him, he may presume that such person has not omitted the precaution to look and listen; and can so regulate his speed as to avoid a collision, until there is something to indicate the contrary to the motorman. Paragraph two is to the effect that until there is something to indicate to the motorman that such precautions have been omitted, and are not being observed, there is no duty resting upon said motorman to check the speed of his car, and he may continue his course. Paragraphs three and four of the instruction are as follows:

"If, however, in the exercise of reasonable care it appears to him that these precautions have been omitted and that the driver is not observing same, then it becomes the duty of the motorman, in the exercise of reasonable care, to so regulate the speed of the street car as to avoid a collision with the driver."

"Further, however, if such motorman in the exercise of reasonable care, does not discover that the driver has omitted these precautions, or is not observing same, until, in the exercise of reasonable care, he cannot avoid the collision with the automobile, then no liability arises if a collision occurs."

It is paragraph three of the foregoing instruction that is complained of. It is contended that this paragraph of the instruction incorrectly states the doctrine of the last clear chance, and further that the doctrine of last clear chance has no application to the facts in the case at bar. The third paragraph of the instruction is certainly incomplete in that it does not fully state the law relative to what is frequently referred to as the humanitarian doctrine or the doctrine of last clear chance. But we cannot agree with counsel that this paragraph of the instruction lays down the rule that the defendant's liability, under the doctrine, began when, by the exercise of reasonable care, the motorman might have discovered that plaintiff was in a position of peril. While that paragraph of the instruction is not full and complete on this phase of the law, the last or fourth paragraph of the instruction clarifies and fully completes the statement of law in this regard. It is there plainly stated that if the motorman does not discover one in a perilous position until in the exercise of reasonable care he is unable to avoid the collision, then no liability arises after a collision occurs. We think it cannot be otherwise understood from a reading of the entire instruction that defendant's liability, under the humanitarian doctrine, would begin when and not until the motorman had discovered plaintiff's perilous position.

But it is contended that the doctrine of last clear chance has no application to the facts in this case. Defendant's motorman testified that when he discovered the automobile approaching the crossing he imme-

diately applied the air and blew the whistle. But that is not all. He further testified that when he discovered the automobile, it and the street car were about equidistant and approximately 75 to 100 feet from the crossing. He stated that the street car was going about 20 to 25 miles per hour, and that the automobile in which the plaintiff was riding was traveling about 30 to 35 miles per hour; that the automobile never slackened its speed, and that the street car was traveling only 10 or 12 miles per hour when it hit the automobile. His testimony further shows that he traveled at least 135 feet after applying the air and sounding the emergency whistle. This testimony alone raises an issue as to whether the motorman exercised reasonable care in an effort to avoid a collision after he discovered plaintiff's perilous position. If the street car and the automobile were approximately an equal distance from the crossing, with the automobile traveling at a uniform faster rate of speed, and the motorman applied his brakes, certainly the automobile would have passed over the crossing without a collision. A number of other witnesses testified that the street car began sounding the emergency whistle at distances ranging from more than 100 to 300 feet from the crossing. It will be seen from an examination of this evidence that there was a question as to whether the motorman exercised reasonable precaution to prevent the collision after discovering the perilous position of plaintiff, and under such circumstances it was the duty of the court to submit the doctrine of the last clear chance to the jury under proper instructions. St. Louis & S. F. Ry. Co. v. Bryan, 113 Okla. 39, 237 Pac. 613; Thrasher v. St. Louis & S. F. Ry. Co., 86 Okla. 88, 206 Pac. 212.

It is next contended that the court erred in giving instruction No. 8, which reads as follows:

"You are instructed that it is the duty of the motorman operating the street car of the defendant in approaching the crossing where the accident occurred to keep a lookout for persons or vehicles on or near its track and to keep said street car under reasonable control so that the same could be stopped in the exercise of reasonable care in the event that the motorman operating the same saw and realized that some person or vehicle was on or near its track and in a position of peril, and if you find from a preponderance of the evidence that such motorman carelessly and negligently failed to do this and that such negligence was the proximate cause of the collision between said street car and the automobile

in which the plaintiff was riding, and the plaintiff was injured and damaged thereby, without fault on his part, then your verdict should be for the plaintiff."

Counsel does not point out specific objections to this instruction except to say that it is similar to instruction No. 7, and the argument presented against instruction No. 7 is equally applicable to instruction No. 8. An instruction almost identical to No. 8 was approved in the case of Oklahoma City Ry. Co. v. Cole, 46 Okla. 753, 149 Pac. 861. In Muskogee Electric Traction Co. v. Tice, supra, it is said that the reason for the rule in the operation of a street car is equally applicable to the operation of an interurban car, which is run to accommodate local travel, stopping at all public crossings where passengers may be waiting, and that this requirement is a material consideration where alleged contributory negligence is relied upon by the defendant. We conclude that it was not error to give the instructions.

It is next contended that the trial court erred in refusing to give an instruction requested by defendant. The substance of this instruction is that it was the duty of the plaintiff, although a child, to exercise ordinary care for his own safety as he approached said crossing, and that ordinary care means that degree of care that an ordinarily prudent and careful child of plaintiff's age and experience would have exercised, under like and similar circumstances. The instruction was designed to further tell the jury that if they should find that an ordinarily prudent child of plaintiff's age and experience would have appreciated the danger of approaching cars and warned the driver of the automobile against such danger, and that if plaintiff knew of the circumstances of the track and of the danger, and he did not so warn the driver, then plaintiff could not recover. The instruction appears to be a correct statement of the law. But the jury was elsewhere instructed as to what duties the law imposed upon plaintiff. Throughout the instructions given by the court no distinction was made between the amount of care and caution required of plaintiff, who was a child, and that required of an adult person, thus tending to hold plaintiff responsible for the same amount of care as would have been required of an adult person. It appears from the instructions that what would have constituted contributory negligence in the case of an adult person was declared to be the test with plaintiff. Certainly under these circum-

stances defendant was not prejudiced by the refusal to give its requested instructions. The instructions given on the question of contributory negligence were much more favorable to defendant than the one requested by it, and we therefore hold that it was not reversible error to refuse to give the requested instruction.

Other assignments of error are set forth in defendant's brief, but they are not discussed or argued, and under the oft-repeated rule of this court will be held to have been waived. The judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is ordered.

Note.—See under (2) 14 R. C. L. p. 771; R. C. L. Perm. Supp. p. 3664. (4) 14 R. C. L. p. 752; R. C. L. Perm. Supp. p. 3659. See "Negligence," 45 C. J. §875, p. 1315, n. 3. "Street Railroads," 36 Cyc. p. 1626, n. 44. "Trial," 38 Cyc. p. 1598, n. 22; p. 1711, n. 19; p. 1779, n. 75.