85    479
88    454

## BEAL-DOYLE DRY GOODS COMPANY *v.* CARR.

### Opinion delivered March 16, 1908.

1. ELEVATOR—CONTRIBUTORY NEGLIGENCE.—Where, in a suit to recover damages sustained by falling down an elevator shaft, there was evidence of negligence of defendant in allowing the door of the elevator to stand open, and that plaintiff, being unacquainted with the place, looked into the shaft, and that in the dim light it appeared to him as if there was a floor inside such shaft, which he took to be the car floor, it was not error to refuse to instruct the jury that if the plaintiff walked into the elevator shaft without stopping and without making investigation to ascertain whether the cage was in position, when, if he had stopped and investigated, he would not have received his injuries, then he cannot recover, "and he cannot excuse himself from making an investigation by reason of the fact that the light at the elevator was so bad that he could not distinguish the open space of the elevator shaft from the surface of the floor upon which he was walking"; the question whether he exercised such care for his own safety as a person of ordinary prudence would have exercised under the circumstances being for the jury. (Page 482.)

2. EVIDENCE—DECLARATION OF INFANT AS PART OF RES GESTAE.—In a suit to recover damages for injuries received by falling down an elevator shaft, where plaintiff's right of action was based upon defendant's negligence in leaving the elevator door open, it was error to refuse to permit defendant to prove that while plaintiff was lying injured at the bottom of the shaft and before he was discovered a child six years old excitedly told his father that "a man (meaning plaintiff) pushed the door of the elevator open and walked in." (Page 483.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; reversed.

*Moore, Smith & Moore,* for appellant.

1. This is a case where the practically undisputed testimony of the appellee with reference to the accident would justify the court in declaring as a matter of law that he was guilty of contributory negligence. The fifth instruction requested by appellant should have been given. 61 Ark. 549; 63 Ark. 426; 76 Ark. 136; *Id.* 224; Thompson on Negligence, §§ 369-428-432; 77 Pac. 397; 54 N. E. 259; 65 Ark. 235.

2. Statements made by Mansel Baugh to his father and another were part of the *res gestae,* and appellant should have been allowed to prove them, notwithstanding the age of the

child. Wigmore on Evidence,, § § 1746, 1747, 1749, 1755, 1750b; 34 Fed. 314; 85 Ga. 751; Wharton on Evidence, § § 258, 267; 48 Ark. 343; 11 Ga. 621; 61 Me. 195; 105 N. W. 1049; 56 N. W. 183; 12 S. E. 18; 43 Ark. 104; 29 Tex. App. 201; 5 Wigmore on Ev. (Supplement), § 1751, p. 168; 79 S. W. 818; 84 S. W. 823; 91 Ind. 513; 11 Enc. of Ev. 316.

*J. H. Harrod* and *W. R. F. Paine,* for appellee.

1. The question of whether or not appellee was, under the proof, guilty of contributory negligence, was one of fact for the jury, and there was, therefore, no error in refusing the fifth instruction requested by appellant. 49 N. Y. Sup. Ct. 304; 100 N. Y. 620; 21 Col. 435; 75 Md. 432; 92 Ia. 328.

2. The statement of Mansel Baugh was not a part of the *res gestae.* It was not an integral part of the transaction, and expressions and exclamations are not a part of the *res gestae* unless they spring up involuntarily, spontaneously, at the time of the transaction. No mere recital of a past transaction can be introduced as a part of the *res gestae.* If it was a part of the *res gestae,* it was not competent because the child was only six years of age and incompetent to testify. 66 Ark. 494; 79 Ark. 85; Kirby's Digest, § 3095; 1 Phillips on Evidence, 13; 1 Chitty's Crim. Law, 568; Underhill on Ev. § 414; Best on Ev. § 154; 23 Am. & Eng. Enc. of Law, 877 and notes; 66 Ark. 264.

McCULLOCH, J. Appellant corporation is engaged in the wholesale dry goods business in the city of Little Rock, and occupies, as its place of business, a three-story building wherein it maintains an elevator for the carriage of passengers from floor to floor. Appellee was injured by falling down the elevator shaft, and sues to recover the damages sustained, alleging negligence of a servant of appellant in allowing the door of the elevator to stand open when the car was not in place to receive passengers. The jury awarded damages, and an appeal has been prosecuted from the judgment.

Appellee went into the building to see one of appellant's employees, who was at work on the third floor, and when he went in the store he was directed by some one sitting on the inside of the door, apparently an employee, to take the elevator. He described the way in which the injury occurred, as follows:

"I walked in the store, and when I got as far from the door as from here to that stove, some gentleman said, 'Whom do you wish to see?' I said, 'Mr. Head.' He said, 'He is on the third floor. Go back and take the elevator.' There was a number of boxes of goods upon each side of the little aisle, not over six feet wide, and I went back. I never had been in the elevator. I went straight back, and when I went back towards the end of the house, I think probably a little past the middle of the house— I never was in there but twice in my life—when I got back there it was very dark, and I could hardly see the floor; I turned to the left. There was a frame, and the door of the elevator was open. It looked to me exactly like there was as much floor inside as out. I stepped in that hole. When I stepped in the hole, that's about all I knew. They got me out and hauled me home."

At the time the injury occurred the elevator car was up at the third floor, and appellee fell down the shaft, a distance of about fifteen feet, to a concrete floor at the bottom. Attention of employees in the store was attracted by his groans, and he was found in a helpless condition. No other eye-witness to the accident testified in the case, but the elevator boy and two ladies who were in the car on the last preceding trip from the first floor testified that the boy shut the door when the car started up.

The case was submitted to the jury upon instructions conceded to be correct as to the duty of appellant in operating the elevator and care of negligence in that respect; and the court gave several instructions on appellant's request as to the duty of appellee to exercise "the precautions for his safety that an ordinarily prudent person would take under the circumstances to ascertain whether the elevator cage was in position before he entered, or attempted to enter, the elevator shaft."

The court refused to give the following instruction, which refusal is assigned as error:

"5. If you find that, upon reaching the elevator, plaintiff walked in without stopping and without making any investigation to ascertain whether the cage was in position, and if he had stopped and made an investigation he would not have received his injuries, then he can not recover in this cause, and he can not excuse himself from making an investigation by reason of the fact that the light at the elevator was so bad that he could

not distinguish the open space of the elevator shaft from the surface of the floor upon which he was walking."

This instruction was incorrect, and was properly refused. It should not be said, as a matter of law, that it was the duty of appellee to stop for the purpose of investigating the condition which existed. It was his duty to exercise such care as a person of ordinary prudence would exercise under like circumstances for his own safety, and whether it was proper or necessary for him to *stop* in order to do this was a question for the jury. *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549; *Railway Co.* v. *Amos,* 54 Ark. 159.

It is insisted, aside from this instruction, that appellee's own account of the accident convicts him of contributory negligence, and that for this reason the verdict is unsupported by evidence. We do not think so. There is strong reason for finding that appellee was guilty of negligence in walking into the open elevator shaft, if it was open as he claims; but we can·not say, as a matter of law, that he was negligent. That was a question for the jury. It is true that he might, by close investigation, have discovered that the car was not in place, and that the shaft was open, but that is not the question. Did he exercise such care for his own safety as a person of ordinary prudence would have exercised under like circumstances? That is what the law required of him, and all that it required; and whether or not he did that was a question of fact to be determined from all the evidence.

Of course, there are many acts and omissions which courts, as matter of law, characterize as negligence *per se.* And, if the evidence in this case showed that appellee walked blindly into the open shaft without exercising any precaution for his own safety, we would say that he had been guilty of negligence which precludes recovery. Such, however, is not the state of the case. He says that he looked, and that it appeared to him in the dim light that there was a floor inside the open space as if it was the floor of the car. If he had not looked at all—in other words, if he had failed to exercise any of his senses to discover danger— then he would have been guilty of negligence. Whether he did so to the extent that a person of ordinary prudence would under the circumstances have done was a question for the jury. This,

because the open door of the elevator could be regarded as an invitation to enter, and might to some extent have thrown him off his guard. *Railway Co.* v. *Amos*, 54 Ark. 158; 3 Elliott on Railroads, § 1157, and cases cited; *Directors, etc.*, v. *Wanless*, 7 Eng. & Irish App. 12; *Merrigan* v. *Boston & Albany Rd.* 154 Mass. 189; *Palmer* v. *New York Central & Hudson River Rd. Co.*, 112 N. Y. 234; *Abbett* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 30 Minn. 482; *Missouri, etc., Ry.* v. *Ray*, 25 Tex. Crim. App. 567.

The New York Court of Appeals, in *Palmer* v. *New York Cent., etc., Rd. Co., supra*, where a traveller went upon a railroad track pursuant to an invitation implied from an open gate and was injured, said: "Negligence is not presumed; and where by the act of the defendant a person has reason to believe that he may cross the track in safety, his attempt to do so, and his lack of that vigilance which under the circumstances might be required, can not be regarded as constituting negligence. He is still bound to exercise ordinary and reasonable care, but the measure of his duty varies with the peculiar circumstances of the case, and its fulfillment must be determined by the jury." The same rule is laid down with respect to entering elevators. *Dawson* v. *Sloan*, 49 N. Y. Sup. Ct. 304; *Colorado Mort. Co.* v. *Rees*, 21 Colo. 435; *People's Bank* v. *Morgolofski*, 75 Md. 432; *Hopkinson* v. *Knapp*, 92 Iowa, 328.

We conclude, therefore, that the instructions upon which the case was submitted to the jury were correct, and that the evidence was sufficient to sustain the verdict.

Appellant offered to prove, as a part of the *res gestae*, a declaration or statement made by Mansel Baugh, a child six years of age, immediately after the accident. The court refused to admit the testimony, and exceptions to this ruling were duly saved. The declaration made by the child and the circumstances under which it was made were as follows:

J. M. Baugh, the father of the boy, was in the store at the time, accompanied by his wife and the child. Jack Maloney, a salesman in the store, testified that he was near the elevator shaft on the first floor, and heard groans or cries of pain down the shaft; that just as he heard the groans the little boy came running to him from in front of the elevator door and said to

witness: "A man came up and pushed open the door and walked in." He stated that the child appeared to be greatly excited, and that he (witness) immediately went down to the bottom of the shaft in the basement and found appellee in the injured condition. The court excluded the statement of the witness concerning the declaration made to him by the child. Appellant also offered to prove by Mr. Baugh that the boy ran to him from the elevator, apparently much excited, and pulled him down and said: "Papa, a man pushed the door of the elevator open and walked in." This was also excluded by the court. The importance of this testimony on the disputed question whether the door to the shaft was left open by appellant's servant or whether appellee opened it, is obvious; and if it was improperly excluded, a reversal of the case must result.

It is contended on behalf of appellee that the testimony was not admissible for the reasons (1) that the declaration of the boy was a narrative of the incident and not a part of the *res gestae,* and (2) that the tender age of the child rendered his statements, even though admissible as a part of the *res gestae,* incompetent. It is not easy, always, to determine when a declaration is a part of the *res gestae.* It is dependent upon the particular circumstances under which the declaration is made. This court in *Clinton* v. *Estes,* 20 Ark. 225, said: "It may be difficult to determine at all times when declarations shall be received as a part of the *res gestae.* But when they explain and illustrate it, they are clearly admissible. Mere narratives of past events, having no necessary connection with the act done, would not tend to explain it. But the declaration may properly refer to a past event as the true reason of the present conduct."

In *Carr* v. *State,* 43 Ark. 102, the court said: "Nor need any such declarations be strictly coincident as to time, if they are generated by an excited feeling which extends without break or let-down from the moment of the event they illustrate." And in *Flynn* v. *State,* 43 Ark. 292, the court said: "It often becomes difficult to determine when declarations should be received as part of the *res gestae.* In cases like this words uttered during the continuance of the main action, or so soon thereafter as to preclude the hypothesis of concoction or premedita-

tion, whether by the active or passive party, become a part of the transaction itself, and, if they are relevant, may be proved as any other fact without calling the party who uttered them."

In *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333, the court quoted with approval the following statement on the subject from Wharton on Evidence, § § 258-267 : "In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.  *  *  *  Therefore, declarations which are the immediate accompaniment of an act are admissible as a part of the *res gestae;* remembering that immediateness is tested by closeness, not of time, but by causal relation as just explained."

Many other cases are cited and quoted from in the Leverett case which illustrate the varied applications of the doctrine, and all of them tend to sustain the contention that in the present case the declaration of the child was, under the circumstances, a part of the *res gestae,* and was admissible, unless otherwise objectionable on account of the age of the declarant.

Prof. Wigmore says this with respect to the time the declaration is made: "It is to be observed that the statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided, there has not been time for the exciting influence to lose its sway and to be dissipated. The fallacy, formerly entertained by a few courts, that the utterances must be strictly contemporaneous, owes its origin to a mistaken application of the verbal act doctrine." 3 Wigmore, Ev. § 1750.

The circumstances of this case, both in point of time and in causal relation to the main transaction, bring it within the doctrine which admits the declaration in evidence as a part of the transaction itself. It is certain that the declaration was made immediately in point of time after the happenings of the accident; and that the declaration itself was the spontaneous emanation born of the excitement of the moment.

Was the declaration rendered inadmissible on account of

the age of the declarant? The answer to this inquiry makes it necessary to consider the grounds upon which declarations made at the time of the occurrence of the main transaction, or immediately thereafter, are held to be competent evidence concerning the transaction.

The statutes of this State declare infants under ten years of age incompetent to testify on account of their presumed incapacity to understand the nature of an oath. Kirby's Digest, § 3095.

Mr. Wigmore in his learned treatise on evidence (vol. 3, § § 1745-1797) discusses and calls attention to the inexactness of the term *res gestae* as applied by the courts to rules allowing declarations to be introduced as evidence, and the confusion which has resulted from a loose use of the term in many discussions on the subject. And he points out the distinction and entire dissimilarity in reason between the rule admitting, as legal evidence, proof of declarations made by the principal actor at the time of the main transaction—verbal acts, as they are termed—for the purpose of elucidating or characterizing it and the rule admitting proof of spontaneous exclamations made either by the principal actor or bystanders at or near the time of the main transaction while under stress of the excitement of the moment, for the purpose of establishing the truth of the fact asserted in the exclamation. Without following up further the interesting discussion of that author on the subject, it is important to note that the class of testimony which we have under consideration in the present case falls within the last mentioned rule, which the author treats as an exception to the rule against hearsay testimony. He gives, as one of the grounds upon which such testimony is admitted, its superior trustworthiness and guaranty of truth by reason of the circumstances under which the declaration is made, and he shows that the death, absence, or other unavailability of the declarant need not be shown in order to render the testimony admissible. "This circumstantial guaranty," he says, "here consists in the consideration already noted that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impression and belief." (Vol. 3, § 1749).

It follows, we think, that the credibility or even competency of the declarant as a witness does not effect the question of the competency of the declaration itself as evidence in the case.

The same author in a recent supplement to his work on evidence (vol. 5, p. 168) lays down the rule that the disqualification of infancy does not exclude the declaration, which would be otherwise admissible, of an infant, because, he says, "the principle of the present exception obviates the usual sources or untrustworthiness in children's testimony; because, furthermore, the orthodox rules for children's testimony are not in themselves meritorious, and, finally, because the oath-test, which usually underlies the objection to children's testimony, is wholly inapplicable to them." Citing *Kinney* v. *State,* 45 Tex. App. 500, 79 S. W. 570, which fully supports the text.

It is also held that the disqualification of the declarant resulting from conviction of infamous crime (*Flores* v. *State* (Tex.), 79 S. W. 808); nor of disqualification on account of being a slave (*Yeatman* v. *Hart* (Tenn.), 6 Humph. 375; *Rogers* v. *Crain,* 30 Tex. 284); nor of disqualification on account of the marital relation (*Kenney* v. *Phillipy,* 91 Ind. 513); nor of the disqualification of insanity, (*Wilson* v. *State* (Texas), 90 S. W. 312), will render the declaration inadmissible.

Our statute expressly places the incompetency of children as witnesses upon the ground of their presumed incapacity to understand the obligation of an oath. But, since the circumstances under which such a declaration is made obviates the necessity of an oath and affords sufficient guaranty of the truth of the declaration without resting on the sanctity of an oath, the reason for holding that the age of the child renders the declaration incompetent ceases.

We therefore conclude that the testimony offered by appellant concerning the declaration of the boy, Mansel Baugh, should not have been excluded.

Reversed and remanded.