ARKANSAS POWER & LIGHT COMPANY *v.* TOLLIVER.

Opinion delivered May 12, 1930.

*Rose, Hemingway, Cantrell & Loughborough* and *El-mer Schoggen,* for appellant.

*Sam T. Poe, Tom Poe* and *McDonald Poe,* for appellee.

BUTLER, J.   The appellee, Pearl Tolliver, was injured in a collision between a Ford sedan, in which she was driving, and a street car operated by the appellant, near Thirteenth and Rice streets in the city of Little Rock on September 2, 1927.  The street car was headed west, the automobile being in front of it.  It is the contention of the appellee that she was driving on the track in front of the street car, and that it ran into and struck the rear of her automobile, inflicting upon her personal injuries.   The appellant contends that the appellee's sedan was parked in a place of safety on the side of the street, and, just as the street car approached, she backed her automobile suddenly and without warning toward the track, thereby bringing about the collision, which could not have been averted by the motorman.

The testimony in the case was in direct conflict.  A group of workmen who were engaged in repairing the street testified that the collision occurred at about the noon hour, at which time they were on the curb near the scene of the accident, taking their noon-day meal; that at that place the street on either side of the car track was being repaired and was so obstructed that it was necessary for those traveling along it to travel partly on the tracks of the appellant company.  These witnesses observed the appellee driving in a westerly direction partly on the car track.  She was proceeding at a moderate rate of speed when a street car approached from her rear and traveling at a more rapid rate of speed than the appellee, rapidly lessening the distance

between them, and, without any warning being given, ran into the Ford sedan, violently knocking it from the street toward the curb and severely injuring the appellee. The motorman and a number of passengers on the street car, as well as other witnesses, testified that just before the street car reached the point of the accident the appellee's car was parked on the edge of the street, and that she suddenly and without warning backed her car on the track in front of the approaching street car, and as she did this the motorman sounded his signal and applied the brakes, but was unable to stop or check the street car in time to avoid striking appellee.

There were several witnesses, including physicians, who testified as to the appellee's injuries. The jury found the issues in favor of the appellee, and assessed her damages at $3,000. The court rendered a judgment in accordance with the verdict, from which the appellant has appealed.

The first ground of error assigned and argued in plaintiff's brief is that instruction No. 1A given for the plaintiff was erroneous and prejudicial in that it incorrectly stated the law of discovered peril. The specific vice of the instruction urged upon our attention is that the instruction told the jury that if the motorman *could have discovered* appellee's peril in time to have stopped his car and avoided the injury to the appellee, had he used ordinary care with the means at his command, and did not do so, appellant was liable, and it is argued that the court should have limited the degree of care required of the defendant's motorman to ordinary care in stopping the car after he actually discovered the plaintiff in a perilous position upon the track, and also that there was no testimony to show that the motorman failed to keep the lookout required by the exercise of ordinary care, and that therefore the instruction was abstract in this regard.

We do not think the instruction inherently wrong or prejudicial. Unlike railroads, a street railway com-

pany has no exclusive right to occupy its own tracks, but has only the preferential rights to that part actually being used at any given point of time, and every one has the right to use the entire street, including the tracks of the street railway company, whenever reasonably necessary or convenient. Therefore, we think that the operator in charge of a street car is under the duty to keep a constant lookout to avoid injuring those who may chance to be in a dangerous position by reason of its operation, and, because of the fact that the street railway uses the streets in common with others, such duty would only be the exercise of ordinary care. The principle, as stated, is not in conflict with the case of *Johnson* v. *Stewart*, 62 Ark. 164, 34 S. W. 889, for the effect of that decision was merely to hold that the duty to keep a lookout did not abrogate the doctrine of contributory negligence. Before the passage of our "lookout statute," it was not the duty of the railroad operatives to keep a constant lookout for persons upon the track for the reason that the railroads had the exclusive occupancy of their tracks, and had the right to assume that the way would be clear. This, however, has never been the rule as to street railways, for, as we have seen, they have not the right to the exclusive use of their tracks. *Bain* v. *Fort Smith L. & T. Co.*, 116 Ark. 125, 172 S. W. 843 L. R. A. 1915D, 1021; *Pankey* v. *Little Rock Ry. & Elec. Co.*, 117 Ark. 337, 174 S. W. 1170.

It is contended that incompetent testimony was admitted on the part of the appellee in permitting her to testify as to what she earned before and after the accident. The true test as to the measure of damages, as suggested by the appellant, is "what she was able to earn since the accident as compared with what she was able to earn before the accident," but the testimony admitted was competent for the purpose of tending to establish that fact. Further objection was made to the testimony of the appellee to the effect that she had no other source of livelihood than that of cleaning and

pressing. We have frequently held that where one had fitted himself for the prosecution of any profession or trade, and by reason of an injury was no longer able to follow such occupation, this might be considered, in measuring the damages sustained, as tending to show the loss of earning power.

It is also contended that the verdict is excessive. This question we need not consider as the case must be reversed and remanded for a new trial for the reasons hereinafter stated.

In the complaint, after the allegation of the injury occasioned by the street car running into the automobile of the appellee, and after the allegations as to negligence, the specific results of the negligence charged were set out in the following language: ''As a result of the negligence and carelessness of the defendant, its servants and employees, complained of herein, the plaintiff received severe, painful and permanent injuries to her person, and has suffered great, severe and excruciating bodily pain and mental anguish. The injuries complained of herein consisted of a fractured rib, a contusion on the back of head, sprained and strained muscles in back and neck, and internal and outer injuries to body and limbs, which are permanent and have greatly impaired the health of plaintiff, and caused her continual and painful suffering to mind and body.'' A number of witnesses testified in support of these allegations, including the appellee's physician, after which Dr. E. F. Ponder was called as a witness, and, after qualifying as an expert in the diagnosis and treatment of mental and nervous disorders, was permitted to testify over the objection of the appellant as to an examination made by him, and his conclusions based thereon regarding certain injuries to the appellee's nervous system. His conclusion was that the appellee was suffering from a specific organic disease of the brain known as ''Friedman's complex,'' and that, in his opinion, this condition was permanent. The specific objection made to

this testimony was that there was no allegation in the complaint of any nervous injury or injury to the nervous system. It will be noted that Dr. Ponder did not testify, nor is it anywhere shown, that the mental disease mentioned was a necessary or even probable result of the injuries sustained by the appellee as described to the witness. The most that can be inferred from his testimony is that the condition described by him could be caused by jars that produce a disturbance. The exact testimony of the witness on this question, after stating the information he received from the appellee as to her condition at, and subsequent to, the accident and after defining "concussion of the brain," is as follows:

"Just how much trouble will be manifested in a concussion depends on the jar, and will leave a more or less permanent condition in the brain. There are two kinds, immediate and more remote. The immediate effect of concussion in trauma is manifested by the evidence I described; and more remote—if it is sufficient to cause vasomotor—it will be manifested in symptoms such as she complained of, such as mental fatigue, inability to be as they formerly were." When asked whether in his opinion the nervous trouble of the appellee was permanent, the witness answered: "Well, that is problematical; the best way to judge the future is by the past. This has been going on for two years; we have claimants at the bureau (interrupted by the court) —that condition can be caused by jars that produce a disturbance. Yes, I believe it is permanent from the history and the present condition. It is known as Friedman's complex. It is an organic trouble, because that affects the circulation of the brain. The only difference between that and an injury that would produce paralysis is that it would have been large hemorrhages and caused paralysis—is the only difference."

The specific injuries alleged in the complaint were a fractured rib, a contusion on the back of head, sprained and strained muscles, internal and outer injuries to the

body and limbs. Any conditions which were symptomatic of the injuries alleged, and by which the existence of those injuries might be established, would be relevant and competent—such as loss of sleep, pain suffered in various parts of the body, lassitude, general debility, and many other things. But the evidence elicited tended to establish the existence of an injury independent and distinct from any of the injuries alleged in the complaint, *i. e.*, that the appellee was suffering from an organic disease of the brain known as "Friedman's Complex," and, as there is no evidence that such disease is the necessary or even probable result of any of the injuries pleaded, the testimony was therefore incompetent, and its admission was error.

The general rule as stated in 17 C. J. 1021, cited by the appellant, is as follows: "In an action for damages the pleadings and proof must correspond. The damages recovered must be warranted by the pleadings, and a defendant is entitled to know from the declarations the character of the injury for which he must answer. Evidence of damages for an injury not mentioned therein, or for which no claim for damages as alleged or for which the claim has been abandoned, cannot be admitted. So in an action for personal injury, where plaintiff describes in his petition the different parts of his body injured, it is presumed that this specification covers the whole cause of action, and that proof of an injury to a wholly different part of the body cannot be shown." This rule is supported by the weight of authority and it seems to be generally held that evidence of an injury or disease not specifically alleged is incompetent, unless such are the necessary results of injuries that are specifically pleaded. *Chesapeake & N. Ry. Co.* v. *Hanmer*, (Ky.), 66 S. W. 375; *Wilkins* v. *Nassau Newspaper Del. Exp. Co.*, 98 App. Div. 130, 90 N. Y. Supp. 678; *Fort Worth, etc., Co.* v. *Rogers,* 21 Tex. Civ. App. 605, 53 S. W. 366; *Atchison, etc., Co.* v. *Willey,* 57 (Kan.) 764, 48 Pac. 25; *Howard* v. *Washington Water Power Co.,* 75

Wash. 255, 134 Pac. 927; *Lane* v. *Kansas City Rys. Co.* (Mo. App.) 228 S. W. 870; *Pugmire* v. *Oregon Short Line R. R. Co.,* 33 Utah 27, 92 Pac. 762; *Gordon* v. *Northern, etc., Co.,* 39 Montana 571, 104 N. W. 679; *Martin* v. *Pac., etc., Co.* (Cal. App.) 255 Pac. 284; *Mobile, etc., Co.* v. *Therrell,* 205 Ala. 553, 88 So. 677; *Ry. Co.* v. *State,* 59 Ark. 165, 26 S. W. 824.

As opposed to this rule, the appellee cites 17 C. J. 1013, where it is said: "As the mind and nervous system are so intimately connected with the body, and so likely to be affected by physical injuries, proof of impairments of these faculties is usually held admissible under allegations in substance of grievous or permanent physical injury. Also, evidence of nervousness is not objectionable on the ground that it is not pleaded specially, where it is offered, *not for the purpose of proving damages for an injury to the nervous system, but merely as proof of one of the manifestations of the physical injury complained of.* A general allegation of injury to the mind or nervous system is sufficient without setting out details." The appellee also cites a number of cases from Kentucky, and other respectable courts, which we have examined with care, and find they merely support the text cited by appellee, and are not in conflict with the rule first stated *supra.*

The appellee argues that, although this testimony was incompetent for the purpose of proving an independent element of damage, it was admissible under the general allegation of injury as showing the extent of the physical injury for which the appellee claimed compensation. This contention is not tenable for the reason that the specific objection was made, that the complaint did not allege any such injury as Dr. Ponder testified to, and at the conclusion of his testimony the appellant moved to exclude same for the reasons stated in its objection. For that reason, the authorities cited by the appellee are not in point.

There is no merit in appellee's contention that the appellant failed to plead surprise and meet the issue by the introduction of controverting testimony. When the appellant specifically objected to the testimony of Dr. Ponder, and afterward at the close of his testimony moved to exclude the same for the reasons stated, and these motions were overruled, the appellant saving its exceptions, it did all that it could to preserve its rights. The court should have sustained the objection and motion, and then the appellee, had she so desired, might have asked for leave to amend her complaint, which the court could have permitted, giving the appellant sufficient time to meet by answer and proof the new issue raised. *Bryant* v. *Swifton,* 85 Ark. 322, 108 S. W. 216.

For the error in the admission of the testimony of Dr. Ponder, the judgment is reversed, and the case is remanded for a new trial.