SYLVESTER *v.* U-DRIVE-EM SYSTEM.

4-4097

Opinion delivered January 27, 1936.

*E. W. Brockman* and *R. W. Wilson*, for appellant.

*Reinberger & Reinberger* and *Donham & Fulk*, for appellee.

McHANEY, J. Appellant's intestate, Charlie Sylvester, was fatally injured by being struck by a car owned by appellee and operated by its employee on the night of February 11, 1934, on Main Street, between Third and Fourth Avenues, in the city of Pine Bluff, and died a short time thereafter. This action was instituted by appellant as administratrix of his estate to recover dam-

ages for his injuries and death. As stated by appellant: "The cause was heard before a jury and submitted solely upon the doctrine of the last clear chance. From a verdict for appellee comes this appeal."

Appellant's first contention for a reversal of the judgment relates to instruction No. 8, requested by her, as follows:

"You are instructed that, even though you might find from a preponderance of the evidence on the whole case that Charlie Sylvester was negligent, yet, if you further find from a preponderance of the evidence on the whole case, that the driver, Ralph Wardlaw, by properly driving the taxi and keeping a proper and constant lookout for persons in the course of his travel, could have discovered the presence of the deceased, Charlie Sylvester, in the street, and by the use of ordinary care and diligence under the circumstances could have avoided striking him, and he failed to do so, your verdict should be for the plaintiff and against the defendant."

The court modified this instruction by striking out the words "could have" immediately preceding the word "discovered," and gave the instruction as thus modified, over appellant's objection and exception to the modification, and this assignment appears to us to be the basis of her principal contention for a reversal.

We think no error was committed in this respect. As stated above, in the language of counsel for appellant, this case was "submitted solely upon the doctrine of the last clear chance." There is no question in this case of negligence on the part of the driver and contributory negligence on the part of deceased. There is some evidence in the record that the driver of the taxi was negligent in driving at an excessive rate of speed, and the evidence is overwhelming that the deceased, while intoxicated, at a late hour of the night, walked or staggered out into the street in the middle of the block, hidden from the driver's view by a parked automobile at the curb, and directly in front of the taxi. But the contributory negligence of the deceased was a bar to the action and appellant did not submit the case on

that theory, but on the theory of "discovered peril" or "last clear chance." "Discovered peril" means peril that is actually discovered and not peril that might have been discovered. As we said in *Missouri Pacific Railroad Co.* v. *Skipper*, 174 Ark. 1083, 298 S. W. 849: "In fact, the doctrine of discovered peril means that, when one person sees another in a place of danger or peril, he must exercise ordinary care to avoid injuring him, and, if he fails to do that, he is liable." And again in *St. Louis S. W. Ry. Co.* v. *Simpson*, 184 Ark. 633, 43 S. W. (2d) 251, we said: "The discovered peril doctrine, or the doctrine of last clear chance, as it is sometimes called, constitutes an exception to the rule that the contributory negligence of the plaintiff is a bar to his action. Under this doctrine, where one discovers the perilous situation of another in time, by the exercise of ordinary care, to prevent injury to him, it is his duty to do so, which is regarded in law as the proximate cause of the injury, and this, too, regardless of the contributory negligence of the injured person. Such a person is regarded in law as having the last clear chance to prevent injury or death to another, and it is his duty to do so."

See also *Johnson* v. *Poinsett Lumber & Mfg. Co.*, 187 Ark. 237, 59 S. W. (2d) 30; *Ark. Power & Light Co.* v. *Dillinger*, 188 Ark. 401, 66 S. W. (2d) 291. In the former case it was held, to quote a headnote: "In an action by a pedestrian struck by a motor-car while walking on a railroad track, an instruction that the discovered peril began, if at all, when it became apparent to the party operating the motor-car that the plaintiff 'was not only upon the track between the rails but that she would remain there' held not error." Appellant relies on the case of *Ark. Power & Light Co.* v. *Heyligers*, 188 Ark. 815, 67 S. W. (2d) 1021. But the instruction there under consideration, and which was held not to be erroneous, did not assume, nor was it conditioned upon, the contributory negligence of the plaintiff. After quoting from § 398, vol. 1, of White's Personal Injuries on Railroads, that the rule "may now be stated to be well-established that the injured person, or his representative, may recover damages for an injury resulting from the

negligence of the defendant, although the negligence of the injured person exposed him to the danger of the injury sustained, if the injury was more immediately caused by the want of care on the defendant's part to avoid the injury, after discovering the peril of the injured person." The court then said: "It would appear to be a sufficient answer to appellant's argument upon this subject to say that, if the failure to use care to avoid injuring the person whose negligence had placed him in a perilous position was the proximate cause of the injury, when proper care, after discovery of the peril, would have averted the injury, such failure to use proper care would likewise be the proximate cause of the injury to a person in peril without fault or negligence on his part, and we conclude therefore that there was no error in the instruction."

Likewise in the case of *Ark. Power & Light Co.* v. *Tolliver*, 181 Ark. 790, 27 S. W. (2d) 985, instruction No. 1A for appellee was criticized by appellant as being incorrect under the discovered peril rule. The instruction was not copied in the opinion, but an examination of the record discloses that it does not assume the contributory negligence of the appellee, but the case was tried on the theory that she was in the exercise of due care for her own safety, and the court instructed the jury, that if she were guilty of contributory negligence, she could not recover, even though its motorman was also negligent as alleged. So it will be seen that these cases were not tried on the "discovered peril" doctrine, but upon the rule of negligence and contributory negligence.

Moreover, appellant asked and the court gave her instruction No. 11 as follows: "You are instructed that, although you may find that the deceased was crossing the street at a point other than an intersection, and although you further find that the deceased was under the influence of some intoxicant, and to the extent that he was unable to appreciate the danger to which he was subjecting himself by walking in the street, and the defendant's driver saw and realized his condition, it then became his duty to exercise ordinary care under the circumstances to prevent striking and injuring the de-

ceased; and, if you find that he failed to exercise such care, and that such failure was the proximate cause of the injury, then your verdict should be for the plaintiff.''

This was a correct declaration because it required the driver to see and to realize the condition of appellant's intestate,—not that he could have seen and could have realized his condition in a place of danger. In other words, the discovered peril began, if at all, just as in *Johnson* v. *Poinsett Lumber & Mfg. Co., supra,* when it became apparent to the driver that said intestate was in a place of danger. It then became his duty to exercise ordinary care to prevent injury to him, and, if he failed to do so, he was negligent. Numerous other cases might be cited in support of the rule re-announced, many of which may be found cited in the cases mentioned. It follows from what we said that the court did not err in modifying said instruction in the manner stated.

It is next said that the court erred in refusing to give appellant's instruction No. 4, to the effect that the deceased was presumed to be in the exercise of due care for his own safety at the time of the injury, and that the burden is upon appellee to show the contrary, unless it sufficiently appears from appellant's testimony. No error was committed in refusing this instruction, for the reason that, since the case was tried upon the doctrine of ''discovered peril'' solely, the question as to whether he was in the exercise of due care for his own safety is immaterial, as, regardless of his contributory negligence, if the driver of the taxi actually saw him in time to avoid striking and injuring him by the exercise of ordinary care, and failed to do so, appellant was entitled to recover under the instructions given.

Appellant also assigns as error and argues that the court erred in giving certain instructions for appellee over appellant's objections. We have examined these assignments and find them without merit. It would unduly extend this opinion to set them out and discuss them in detail.

We have carefully examined all of the instructions given and refused and find that the court fully and fairly instructed the jury on the whole case.

It is finally insisted that the court erred in the admission of certain testimony. The court permitted one witness to testify that the deceased appeared to be under the influence of whiskey because she saw him stagger, and another witness to testify that he talked to the driver of the taxi shortly after the accident, and the driver said: "He didn't see him until he stepped out in front of him between two cars and he was right on him before he seen him," meaning the deceased. As to the former witness, who thought the deceased was intoxicated because he staggered, we think the testimony was competent as tending to show the condition deceased was in at the time he left the restaurant where the witness was a waitress; and as to the latter, the testimony as to what the driver said, if error, was invited by appellant who asked the same witness on direct examination as to statements made by the driver.

We find no error, and the judgment is accordingly affirmed.

JOHNSON, C. J., and HUMPHREYS, J., dissent.

JOHNSON, C. J., (dissenting). The majority opinion indeed takes this court back to "horse and buggy days" in reference to the doctrine of "last clear chance" or "discovered peril."

As I understand the English language, we expressly held in *Arkansas Power & Light Co.* v. *Tolliver*, 181 Ark. 790, 27 S. W. (2d) 985, to the contrary of the doctrine now announced by the majority. We there said: "The specific vice of the instruction urged upon our attention is that the instruction told the jury that, if the motorman could have discovered appellee's peril in time to have stopped his car and avoided the injury to the appellee, had he used ordinary care with the means at his command, and did not do so, appellant was liable, and it is argued that the court should have limited the degree of care required of the defendant's motorman to ordinary care in stopping the car after he actually discovered the plaintiff in a perilous position upon the track, and also that there was no testimony to show that the motorman failed to keep the lookout required by the exercise of

ordinary care, and that therefore the instruction was abstract in this regard.

"We do not think the instruction inherently wrong or prejudicial."

Demonstratedly this language means what it says: "The motorman could have discovered appellee's peril." This means that the motorman had the duty of keeping a lookout for people in the street and to avoid injury if it could be done by the exercise of ordinary care.

Again in the more recent case of *Arkansas, Power & Light Co.* v. *Heyligers,* 188 Ark. 815, 67 S. W. (2d) 1021, we expressly held that the giving of the following instruction was not error. "That if * * * the person in charge of said street car discovered the position of said automobile and the perilous condition of the occupants thereof, or could have discovered same by the exercise of due care, that it became the duty of the operator of said street car to use all reasonable means within his power, consistent with the safe operation of said street car, to avoid the striking of said automobile, and, if he failed to exercise such precaution after he discovered, or could have discovered, such peril, and you should further find by a preponderance of the testimony that the injury to plaintiff, if any, was caused by such failure on the part of the operator of said street car, then your verdict should be for the plaintiff."

The language of the quoted instruction, if it means what it says, certainly committed this court to the doctrine that in all cases where people were using the streets or highways with equal rights each has the duty to keep a lookout for others using such thoroughfare and avoid injuries if reasonably possible. If I am correct in my construction of the language employed by my two associates in the opinion referred to, and this I leave to the judgment of the bench and bar of this State, I submit that the majority is now announcing one rule applicable to drivers of motor vehicles and another rule applicable to street railways, when in fact and under the law there is no difference in duty. On the other hand, if the majority intend to hold that the duties of the motor vehicle

operator and motorman on a street car are identical, then the majority opinion breaks down the rule of *stare decisis* and previous opinions of this court are mere scraps of paper to be used only when the fancy of the court elects.

The majority seem to put much reliance upon *Johnson* v. *Poinsett Lumber Company,* 187 Ark. 237, 59 S. W. (2d) 30, as supporting the view that an operator of an automobile has no duty to keep a lookout for other people rightfully using a thoroughfare. Such is not the letter, spirit, nor effect of the opinion in this case. The facts there were that the Poinsett Lumber Company owned and operated a log tramroad, not a common carrier— and Mrs. Johnson was walking upon this tramroad without right when injured. No instructions were requested, granted nor refused which presented the issue now decided by the majority; and moreover, the issue is not discussed nor decided in the opinion. All other cases cited and relied upon by the majority are equally without force as will be ascertained from a cursory examination.

The position taken by this court in the Tolliver and Heyligers cases cited, *supra,* were deliberately assumed and I assert should be respected as their dignity and importance demand. These two cases are in line with all modern decisions on the question made necessary by the advent of a dangerous instrumentality upon the thoroughfares of the world. *Dorough* v. *Ala. G. So. Ry. Co.,* 221 Ala. 513, 128 So. 602; *Wood* v. *N. Ala. Ry. Co.,* 22 Ala. App. 513, 117 So. 495; *Mobile Light & R. Co.* v. *Fuller,* 18 Ala. App. 301, 92 So. 89; *Handley* v. *Lombardi,* 122 Cal. App. 22, 9 Pac. (2d) 867; *Gundry* v. *Atchison, T. & S. R. Ry. Co.,* 104 Cal. App. 753, 286 Pac. 718; *Sichterman* v. *R. M. Hollingshead Co.,* 94 Cal. App. 486, 271 Pac. 372; *Nicolai* v. *Pacific Electric Ry. Co.,* 92 Cal. App. 100, 267 Pac. 758; *Collins* v. *Marsh,* 176 Cal. 639, 169 Pac. 389; *Sowers* v. *Indiana Service Corporation,* 98 Ind. App. 261, 188 N. E. 865; *Disher* v. *Kincaid,* 193 Iowa 83, 186 N. W. 666; *Boerema* v. *Cook,* 256 Mich. 266, 239 N. W. 314; *Smith* v. *C. R. I. & P. Ry. Co.,* 228 Mo. App. 600, 71 S. W. 842; *Johnson* v. *City of Omaha,* 108 Neb. 481, 188 N. W. 122; *Cleveland Ry. Co.* v. *Masterson,* 126 Ohio St.

42, 183 N. W. 873; *S. W. Mo. Ry. Co.* v. *Duncan,* 139 Okla. 287, 282 Pac. 327; *Emmons* v. *So. Pac. Co.,* 97 Ore. 263, 191 Pac. 333; *Wichita Coca-Cola Bottling Co.* v. *Levine,* (Tex.) 68 S. W. (2d) 310; *Northern Texas Traction Co.* v. *Singer,* (Tex.) 34 S. W. (2d) 920; *Walker* v. *East St. Louis & S. Ry. Co.* (C. C. A. Mo.) 25 F. (2d) 579; *Penn. Ry. Co.* v. *Swartzel* (C. C. A. Ind.) 17 F. (2d) 869; *Kinney* v. *Chicago Great Western Ry. Co.* (C. C. A. Iowa) 17 Fed. (2d) 708.

The doctrine now announced by the majority opinion, if adhered to, will permit a careless and drunken driver of an automobile to fall asleep at the wheel and run his car over and upon the lame, sick and irresponsible rightfully upon the State's thoroughfare and claim immunity because of his want of care.

Under the majority view, a complete defense may be now offered and sustained by a drunken or incompetent automobile driver by merely saying, "I shut my eyes and did not see," therefore no liability. My conception of the law is that this is no defense, complete or partial, and for this reason I most respectfully dissent from the majority pronouncement.