STRICKLAND TRANSP. CO. et al. v. GUNTER.

No. 13817.

United States Court of Appeals
Eighth Circuit.

June 21, 1949.

Rehearing Denied Aug. 3, 1949.

Ned Stewart, Texarkana, Ark. (Shaver, Stewart & Jones, Texarkana, Ark., were on the brief), for appellants.

W. S. Atkins, Hope, Ark. (J. H. Lookadoo, Arkadelphia, Ark., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment on a jury verdict in favor of the plaintiff in an action for damages for the death of plaintiff's intestate, Donald Gunter, in a collision between a pick-up truck driven by the deceased and a transport truck and trailer driven by Gorman Smith, an employee of his co-defendant, Strickland Transportation Company. The action was originally brought in the State court, and removed to the Federal court on the ground of diversity of citizenship.

The collision in which Gunter was apparently instantly killed occurred about daylight on the morning of January 28, 1948, at a point on U. S. Highway 67 one and one-quarter miles north of the town of Gurdon, Arkansas. Highway 67 is a trunk highway and, in the vicinity of the accident, is paved with concrete on an embankment with an earth shoulder on either side of the concrete slab. The center line dividing the east or northbound traffic lane from the west or southbound traffic lane is painted with black paint. The concrete slab and the shoulder of the embankment on either side of it were covered with ice. The highway was very slick. The ice on the pavement was thick enough to make it difficult if not impossible for the driver of an automobile to see the black stripe dividing the west from the east traffic lane, but the outer edges of the concrete were discernible because the concrete slab was higher than the shoulders of the embankment. The ice on the pavement was so thick and so hard that the tire marks of neither vehicle could be discovered after the collision.

At the time of the collision defendant company's transport truck was moving north from Gurdon toward Little Rock, and the deceased was driving his pick-up truck south from Little Rock toward Gurdon. After the collision the transport truck continued in a northwesterly direction for a distance of about 50 feet, pushing the pick-up truck ahead of it, both vehicles going off the embankment into a ditch filled with water in which the pick-up truck was almost wholly submerged, the tractor of the transport on top of it and the front end of the transport trailer resting at the bottom of the embankment on the edge of the water. The point of impact of the vehicles was on the left or east side of the pick-up truck immediately back of the left front fender and on the left or west side of the transport truck near the left front wheel of the tractor.

In the complaint the defendants were charged with negligence in operating the transport truck at a dangerous rate of speed, in view of the conditions prevailing at the time and place of the accident; in failing to keep a lookout for vehicles coming from the opposite direction; and in driving the transport truck over the center line of the highway into the pick-up truck. In the answers and cross complaint defendants charged the driver of the pick-up truck with the same acts of negligence.

The evidence on behalf of the plaintiff tended to show that Gunter was driving his truck at a reasonable rate of speed, within the southbound lane of the highway, and at the moment the vehicles approached each other the transport truck crossed the center line and struck the pick-up truck while it was in the southbound lane, and continued moving until the vehicles left the highway embankment on the west side. The evidence on the part of the defendants was that the transport truck was at all times within the northbound highway lane, was being driven at a reasonable rate of speed; that the pick-up truck was moving at a reckless and excessive speed and in the northbound lane; and that the pick-up truck driver lost control of his vehicle and struck the transport truck while it was still on its proper side of the highway. Under the evidence the jury might have found in favor of either party as to the cause of the collision and the point on the highway where it occurred.

At the conclusion of the evidence on behalf of the plaintiff, as well as at the conclusion of all of the evidence, defendants requested the court for a directed verdict in their favor on the ground that there was no substantial evidence to support a verdict for the plaintiff. The court refused this request, submitting the questions of the negligence and contributory negligence raised on the pleadings to the jury under proper instructions. But, after the completion of all the evidence, the plaintiff requested and the court gave an instruction submitting to the jury the right of the plaintiff under the evidence to recover on the doctrine of last clear chance or discovered peril as it is known in Arkansas law. Defendants objected to this instruction on the grounds: (1) that the question of discovered peril was not within the issues raised by the pleadings, and that on the allegations of the pleadings the complaint could not be considered amended to conform to the proof so as to present the issue of discovered peril to the jury; and (2) that the instruction was erroneous be-cause in conflict with other instructions given by the court on the question of negligence, and because there was no substantial evidence to show that the defendant driver discovered the alleged peril of the deceased in time to avoid the collision by the exercise of ordinary care after the discovery.

■ Whether the court properly treated the complaint as amended to conform to the proof under Rule 15(b) [1] of the Federal Rules of Civil Procedure, 28 U.S.C.A., we do not decide, since we reach the conclusion that under Arkansas law, which is controlling here, the court committed reversible error in submitting the question of discovered peril to the jury.

■ Under the decisions of the Supreme Court of Arkansas, " 'Discovered peril' means peril that is actually discovered and not peril that might have been discovered." Sylvester v. U-Drive-Em System, 192 Ark. 75, 90 S.W.2d 232, 233. The doctrine of last clear chance or discovered peril is not applicable unless the person charged actually discovered the peril of the person in time to avoid his injury by the exercise of ordinary care in the use of the means then at his disposal. The doctrine presupposes the negligence of the injured person. The negligence with which defendant is chargeable is negligence occurring after and not before the actual discovery of the injured person's peril. Contrary to the rule in some of the States, the liability of the defendant can not be established by proof that by the use of ordinary care he could have discovered the peril of the injured in time to have avoided his injury. The decisions of this Circuit have been in accord with the Arkansas rule. Wheelock v. Clay, 8 Cir., 13 F.2d 972; Walker v. East St. Louis & S. Ry. Co., 8 Cir., 25 F.2d 579, decided before Erie v. Tompkins, 304 U.S. 604, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

To sustain the application of the doctrine of discovered peril for the benefit of the plaintiff in the present case, plaintiff relies, as she must, upon the testimony of

---

[1] Rule 15(b) provides that: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

the driver of the transport truck and upon the evidence of conditions existing at the time and place of the accident. For, on the evidence on her behalf, Gunter was at all times on the right side of the road, driving his pick-up truck at a reasonable rate of speed, the truck under control, and never in a position of peril.

The testimony of the transport driver was that he was driving between 20 and 25 miles an hour. The lights on his truck were burning. It was just beginning to turn gray in the east. He first saw the pick-up truck as it came around a curve ahead of him moving at a speed of 40 miles an hour. He estimated the distance between him and the pick-up truck at more than 400 feet. The actual distance between the vehicles at this time was probably something over 500 feet.

When the transport driver first saw the pick-up truck rounding the curve, he couldn't tell which side of the road it was on. When the pick-up truck came out of the curve, he could see that it was on the inside of the curve, which was the transport's side of the highway, and that the rear end of the pick-up truck was swerving from side to side as if Gunter had lost control of it. The transport driver immediately applied the brakes on the transport trailer which was loaded with merchandise weighing about 23,000 pounds. He had separate brakes for the tractor which he could not apply, as he explained, because the application of the brakes on the tractor would cause the transport to "jackknife," and the result would have been that the transport truck would have gone "all over the road." He said that because of the ice on the highway and the weight of the loaded trailer he would have completely lost control of his vehicle had he applied the tractor brakes; that the application of the braking power of the trailer was effective to hold the transport straight in its course on the right side of the highway and to slightly reduce its speed. The trailer was 30 feet in length and the overall length of the transport was 42 feet. This evidence as to the effect of applying the tractor brakes is not disputed.

When the vehicles were separated by a distance of approximately 150 feet, the transport driver saw that a collision was inevitable; and, when the pick-up truck had reached a point 25 feet ahead of the transport, he moved out from under the steering wheel and over to the right hand side of the tractor cab. The force of the collision caused the tractor to swing to the left, and its momentum, with the heavy load it was carrying, was sufficient to push the pick-up truck across the highway and into the ditch.

We think this case can not be distinguished from the Arkansas case of Houck v. Marshall, 198 Ark. 938, 132 S.W.2d 181, 182, 183, in which the application of the doctrine of discovered peril was denied. Houck v. Marshall involved a collision between two automobiles proceeding in opposite directions on a highway. In the collision Marshall, a passenger in one of the cars, was injured, and brought an action against Houck for damages, alleging in his complaint that defendant was negligent in driving on the wrong side of the highway at a reckless and excessive speed and in failing to avoid a collision by the exercise of ordinary care after discovering the peril of plaintiff. Plaintiff's testimony supported the allegations of the complaint. Defendant, on the other hand, testified that he saw the car in which the plaintiff was a passenger when it was about 200 yards away. He testified that he was driving on the proper side of the road and that plaintiff's car was approaching him on the same side of the road; that, when he realized that the car in which plaintiff was riding was on the wrong side of the road, he started to apply his brakes, thinking that the driver of plaintiff's car would move to his proper traffic lane; that plaintiff's car seemed to be swinging from side to side of the road, and that as the cars "were getting pretty close together," defendant realized that the collision was going to occur but was unable to avoid it.

In denying the applicability of the discovered peril doctrine the Arkansas court said:

"Under the facts in the instant case we are of the view that the discovered peril,

or the last clear chance doctrine, does not apply and that the court, therefore, erred in giving plaintiff's instruction No. 5.[2] We think this is a case wherein the simple question of negligence and proximate cause should be applied.

"Here we have the drivers of two automobiles approaching each other on a twenty-foot, gravel, roadway, one on the wrong side of the road, and each car continuing without stopping until a collision occurs. * * * In the instant case the driver of each car had a right to assume that the other would try to avoid a collision. * * *

"* * * The annotator who compiled the exhaustive annotations of more than one hundred pages in 92 A.L.R., finally, as to a situation similar to that in the instant case, concludes (page 140): 'When, however, the *continuing negligence* of the injured person in failing to discover his own danger and move out of the danger zone stands over against the continuing negligence of defendant for failing to discover the situation and avert the accident, it is difficult to understand how the doctrine of last clear chance may be applied consistent with the proximate cause view.'

"Referring particularly to a situation where the doctrine may be made applicable to railroads, street railways and the like, he then further said: 'Even such considerations fail in the case, for example, of a collision between two automobiles of equal potentiality for harm. In such a case, as upon the present hypothesis, the parties are charged equally with the failure to discover the danger, and the negligence of the plaintiff in that regard continues at least as long as defendant's negligence, there seems to be no ground for applying the doctrine in favor of the plaintiff rather than the defendant, except that, as the event proved, it was the former rather than the latter who was injured.'

"We think this to be the correct view of the law in cases presenting facts similar to these in the instant case."

■■■ In this case, as in Houck v. Marshall, each party was charged with the same duty of driving his car, under the conditions prevailing at the time and place of the accident, with due regard for the safety of the other. Plaintiff carried the burden of proving that the defendants had the last clear chance to avoid the collision. The doctrine of discovered peril applied equally to both parties, one as much entitled to the benefit of the doctrine as was the other. Each had the same opportunity to discover the peril of the other and the same obligation and the same opportunity, so far as the evidence goes, to avoid the collision after the discovery. If Gunter was unable to regain control of his car in time to avoid the collision because of the speed at which he was driving or because of the condition of the highway, defendant Smith was equally unable for the same reasons. Under the theory of plaintiff on the doctrine of discovered peril the evidence is that Gunter continued to drive his truck at undiminished speed, swinging from side to side on the road until the moment of impact. Nothing in the evidence supports the inference that he made any effort on behalf of himself or defendant, Smith. What the driver of the transport could have done under the circumstances to avoid the accident is difficult to see. Had he been able to stop the transport in the northbound traffic lane, there is nothing in the evidence to support a finding that the collision would not have occurred. It can not be said that ordinary care required the transport driver to attempt to move his long and heavy transport into the plaintiff's traffic lane, or to believe that this change of course would avoid a collision, if there was time to make it. The combined speed of the colliding vehicles was at least 60 miles an hour or 88 feet a second. Not more than 6 seconds passed between the transport driver's first sight of the pick-up truck and the collision. Under the Arkansas rule, he can not be charged with negligence in failing to discover the peril of Gunter at the instant he saw the lights of the pick-up truck coming around the curve. He was at least entitled to some time to appraise the sit-

[2] The instruction submitted the issue of discovered peril to the jury for the benefit of plaintiff.

uation, and, afterwards, to time in which to avoid the accident with the means at his disposal. Under the evidence the jury was not justified in finding that he had either.

Since it is impossible to say whether the verdict of the jury was based upon a finding for the plaintiff on the grounds of negligence explicitly charged in the complaint or under the doctrine of discovered peril, the judgment of the District Court is reversed and the cause remanded for a new trial.